By the Court. Campbell, J.
Exceptions were taken in these cases to the report of the master on the distribution of a surplus. It was claimed by three parties. 1st. By Isabella McBurney, as the owner of the equity of redemption. 2d. By the public administrator of the city of New York, who had taken out letters of administration upon the estate of Alexander McBurney, the mortgagor. And 3d. By Gordon Burnham, under a conveyance from the general assignee in bankruptcy, conveying the interest of Thomas McBurney, the brother and surviving partner of the firm of which the mortgagor was a member at the time of his death. The master reported, that neither of the claimants were entitled to any portion of the surplus. That the conveyance to Isabella McBurney of the equity of redemption, which was made by her son, Alexander McBurney, just previous to his death, was made without adequate consideration, and with the intent to hinder and delay creditors, and was fraudulent and void. That at the time of the death of Alexander McBurney, upon whose estate the public administrator had taken out letters, the property out of which the surplus arose, was real estate, and therefore he was not entitled to receive and distribute it. That the real estate was the individual property of Alexander McBurney at the time of his death, and, therefore, the general assignee took no estate under a decree in bankruptcy against Thomas McBurney, the brother and partner of Alexander, and no interest in the premises passed under the deed from the general assignee to Burnham.
All the parties excepted to the master’s report. The premises out of which the surplus arose, were the house and lot No. 79 Greene street, in the city of New York : and were, in November, 1842, a few days previous to his death, conveyed by Alexander McBurney to his mother, Isabella McBurney, subject to the two mortgages which were foreclosed in these suits. The firm of T. & A. McBurney, of which Alexander was a member, was heavily insolvent at the time of the conveyance. It is not pretended that any consideration passed at the time, but it is alleged that Alexander McBurney was indebted to his mother, for money lent to him by her many years before; of which moneys, however, there is no account, and" for the repayment of *563 which there was no obligation in writing ; and the existence of such indebtedness is certainly, from the testimony, very problematical. The counsel of Mrs. McBurney did not take part in the argument, but has by permission handed to us a brief which certainly might attract the attention of the curious, but which, however brilliant as a philosophical or moral essay, has failed to convince us of the sufficiency of Mrs. McBumey’s title, either in law or in equity, to the surplus moneys which are the subject matter of the controversy before us. We are constrained to say that, in our judgment, the cry of fraud upon creditors, to which the master listened, and which the counsel so much deprecated, was not raised without adequate cause, in this instance at least; and we must confirm his report, that the conveyance was made to her without adequate consideration, and with the intent to hinder, delay, and defraud creditors ; and that it is void; and that she is not entitled to any portion of the fund.
This surplus fund is claimed by the public administrator, under his letters of administration upon the estate of Alexander McBurney. The statute, (2 R. S. 83,) enumerates and defines the property which passes to executors and administrators, and it is very evident that equities of redemption in mortgaged premises are not included in the list.
Almost the precise case with the present arose, and was decided in the English court.of chancery, and will be found in 2 Sim. & Stu. 323, (Wright v. Rose.) The property was mortgaged, and sold after the death of the mortgagor. The plaintiffs took out letters of administration, and then filed their bill to reach the surplus in the hands of the defendant. It did not appear on the face of the bill to whom the right of redemption belonged. A demurrer was interposed to the bill, and was allowed ; the court deciding, that if a sale take place in the life time of the mortgagor, the surplus is personal estate, but if after his death, real estate, because, in the latter case, the equity of redemption descended to the heir. We are satisfied that, upon general principles, and according to our statutory provisions, the public administrator is not entitled to the fund.
The right of Gordon Burnham to this fund was presented, and argued with ability and confidence by his counsel,- but we *564 are constrained to say, that in his case also, we think the report of the master correct. After the death of Alexander McBurney, Thomas McBurney for himself and as surviving partner of T» & A. McBurney, filed his petition for a discharge in bankruptcy under the provisions of the act of 1841. He was decreed a bankrupt, and among his assets which were sold by the general assignee in bankruptcy, was his interest or estate in the dwelling house and lot, No. 79 Greene street, which interest or estate for a nominal sum, was conveyed to Mr. Burnham. Successful opposition was made by the creditors of Thomas McBurney ta-ins discharge ; and his Honor, the U. S. Judge for the Southern District of New York, on a full hearing, pronounced that the house and lot, No. 79 Greene street, had been purchased with partnership funds, and was partnership property; and that Thomas McBurney having stood by and assented to the conveyance by Alexander McBurney to Mrs. McBurney, made with intent to defraud, was himself guilty of fraud upon his creditors ; and for this, and other reasons, was not entitled to his discharge.
We are asked to consider this decree of the U. S. District Court as binding, and as determining the rights of Mr. Burn-ham to the fund. It can hardly be seriously contended that a decision thus made, where a part only of the claimants were before the court, would he binding in the present controversy. But it is, perhaps, not material to decide this question; nor whether it was competent for the cousel to read on the hearing papers in bankruptcy which were not produced and proved before the master. There is no doubt that, under the law of Congress, the power is given to the U. S. District Court, to determine by summary proceedings, questions relating to the bankrupt’s property, and also the rights of creditors to its distribution. It was competent for that court to decide, that the property in question was partnership property, and that therefore Thomas McBurney, by not setting forth that fact, had been guilty of fraud, and was not entitled to his discharge. If the firm of T. & A. McBurney had gone into bankruptcy, it would have been its duty to determine whether the property in question was partnership property, or had been "purchased with *565 partnership funds, in order that, if belonging to the partnersnip assets, the proceeds should be distributed among the creditors of the firm, and not among the separate creditors of Alexander McBurney. The decree made in the U. S. Court, in the matter of Thomas McBurney, settled the question in that court, so far as Thomas McBurney was concerned, that the property in question had been purchased with partnership funds, and that'' Thomas McBurney had, in contemplation of bankruptcy, stood by and assented to the conveyance to his mother, and that this was a fraud upon creditors, and he was not entitled to his discharge.
“The obvious design of the Bankrupt Act of 1841,” says Judge Story, (Ex parte Christy, 3 Howard Rep. 312,) “ was to secure a prompt and effectual administration and settlement of the estates of all bankrupts within a limited period. For this purpose, it was indispensable that an entire system adequate to that end should be provided by Congress, capable of being worked out through the instrumentality of its own courts, independently of all aid and assistance from any other tribunal over which it could exercise no effectual control;” and for this purpose, the courts of the United States sitting in bankruptcy were clothed with most ample powers. But though the powers were ample, the exercise of such powers was necessarily confined strictly to the subject matter submitted under the act. No power was given to vest in assignees the title to property where the title never existed in the bankrupt himself; nor to preclude creditors from enforcing rights and liens upon property which existed independently of the bankrupt act. In this case, it was competent for the assignee to sell the interest of Thomas McBurney in the house and lot, 79 Greene street. That interest, we think, was merely nominal. If it were the individual property of Alexander McBurney, and so we are bound to consider it from the testimony before us, then the bankrupt had no interest in it which would pass to the assignee. If the premises were purchased with partnership funds, (and so it doubtless appeared by the testimony produced before his Honor, the U. S. District Judge,) then the-title passed to-Isabella-McBurney under the conveyance made with the assent of Thomas ; or, if that con *566 veyance were void, to the heirs at law of Alexander,' subject to the claims of creditors. To constitute it partnership property, it should not only have been purchased with partnership funds, but it should have been used for partnership purposes ; and all the cases seem to contemplate this distinction. (Crawshay v. Maule, 1 Swanston, 508 ; Philip v. Philip, 1 Mylne & Keene, 649; Fereday v. Wightwick, 1 Russell & Mylne, 45.) The premises in question, were occupied as a dwelling house, and it was not pretended that they were ever- used for partnership purposes. If it had been partnership property, then Thomas McBurney having assented to the conveyance to his mother, would be bound by that conveyance, and his creditors alone could reach the property. If the conveyance were void as against him, and he, as a brother of Alexander, had been entitled to a portion of the premises, still, as his heir at law, he would take subject to the equitable lien of creditors. But again, if this property was purchased with the funds of the partnership, and the title taken by Alexander McBurney, the statute declares, that the rights and interests of the parties (1 R. S. 728, § 51,) are as follows : “ Where a grant for a valuable consideration shall be made to one person, and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made, but the title shall vest in the person named as the alienee in such conveyance, subject only to- the provisions of the next section.”' The next section provides, that such conveyances shall be presumed fraudulent as against creditors existing at the time of the conveyance, and that where a fraudulent intent is not disproved, a trust shall result in favor of such creditors to the extent of their demands. The conveyance having been made to Alexander McBurney with the consent of Thomas, even if the whole purchase money had been advanced by Thomas, the absolute title would have- vested in Alexander, subject only to be defeated by the creditors of Thomas existing at the time of the conveyance.
In no event, therefore, did any title pass under the assignee’s sale to Burnham, which transferred only the right of Thomas McBurney.
*567 We think the report of the master is correct, and that neither Isabella McBurney, the public adminstrator, nor Gordon Burn-ham, are entitled to this surplus fund. It is equitable assets in this court, to be divided among the creditors of Alexander "McBurney, and the separate creditors of Thomas McBurney, if he had such at the time of the conveyance; and if it shall hereafter appear that the premises were purchased with partnership funds, and if there are no separate creditors, then among the creditors of the firm of T. & A. McBurney. It may be referred to a referee, with directions that he cause notice to be given to the separate creditors of Alexander and Thomas McBurney, and also to the creditors of the firm, by publication in one or more newspapers in the city of New York for six weeks, requiring such creditors to present and prove their claims ; and that he report such claims to this court, and also whether the premises were purchased with partnership funds; to the end that, on the coming in of that report, an order may be made for the just distribution of such fund among the creditors who may appear to be entitled to the same. No costs are .allowed to either party.(a)

 A reference was had accordingly, which resulted in the distribution of the fund among the creditors of Alexander and Thomas McBurney.