Chester *v.* Dickerson.

---

## CHESTER and others *vs.* DICKERSON and others.

Parties committing a fraud, in the sale of land, are jointly and severally liable. Evidence, therefore, which implicates one, and not all, is admissible, and, if sufficient, will justify a verdict against one alone.

A person committing a wrong, of that nature, is liable to whomsoever suffers by the fraud; whether or not there be any privity between the person perpetrating the fraud and the person receiving the damage by reason of it.

One who is proved to have personally assisted in creating fraudulent appearances upon land afterwards sold to the plaintiffs, by placing petroleum oil thereon, thereby inducing the belief that the oil was the production of the land, before his partnership with the other defendants was formed, is l able to the plaintiffs, if they were deceived by the fraud; even if he passec the title to others, and they sold to the plaintiffs. Evidence, therefore, tha t he did these acts, shortly before the other defendants became interested in the land is admissible, as to him.

Where it was proved that a written agreement between the defendants, for a partnership, with lands for its subject, was executed in November, 1864, and there was some proof that the agreement existed in parol in September, previous; *Held,* that it was not erroneous for the judge to leave it to the jury to fix the time during which the agreement existed in parol, if at all, before the writing was executed.

Chester *v.* Dickerson.

One of several persons owning land, as partners, is liable for the acts of the others, done while the partnership exists, whereby a deceptive appearance is given to the land, the subject of the partnership, a purchaser defrauded, and the partnership realizes the proceeds of the fraud. This principle applies as well while the agreement of partnership is in parol, as while it is in writing.

Evidence of the continuance of such fraudulent acts, by one of the partners, between the making and completion of a contract for the purchase of the land by the plaintiff, is admissible, in an action against all of them, for the fraud.

A partnership may exist with lands for its subject. Such a partnership may be created by parol.

THIS action was for fraud in the sale of lands bought by the plaintiffs in December, 1864. It was brought by the plaintiffs, who, in 1864, were partners in the petroleum business in New York, against Francis A. De Wint, John W. Jones, Edgar Reed and John S. Dickerson. Francis A. De Wint died during the pendency of the action. The cause was tried at the Dutchess circuit in December, 1866, before Justice J. F. BARNARD and a jury. When the plaintiffs rested, and again at the close of the defendants' testimony, the counsel for the defendants moved to dismiss the complaint as against John S. Dickerson, there being no evidence whatever to connect him with any of the alleged deceit, or any of the matters complained of and proved. The motion was denied, and the defendants' counsel excepted.

The jury found a verdict against the three surviving defendants, for $51,873. A motion was made for a new trial, on the minutes of the judge, and denied without argument, and judgment entered, and the defendants, Dickerson and Reed, each appealed separately from the order denying a new trial, and from the judgment.

*James Emott,* for the appellants, Dickerson and Reed. I. The verdict is clearly against the weight of evidence. It cannot be sustained, unless the story of Higgs, not

Chester *v.* Dickerson.

only generally, as to his putting oil on the lands, but in every detail and particular connecting the defendants with his frauds, and that during the brief term of the alleged partnership, is fully credited. The judge should have charged the jury to disregard the evidence of Higgs in this respect, as entirely overborne by the evidence opposing him, and if they refused to do so, should have granted the motion, at the close of the trial, to set aside the verdict, as against the weight of evidence. The charge of the court on this point, as it was given, and the indiscriminate admission of evidence of acts and declarations, both before and after the partnership, and before and after the sale, rendered it impossible for the jury to do otherwise than to judge Higgs' story as a whole. The result was inevitable that when they were satisfied that he committed the rascality, which he so unblushingly avowed, they rushed at once to this verdict against the defendants, one of whom, at least, is admitted to be innocent of any actual wrong. The question as to how far Higgs was to be trusted as to dates, or the persons for whom he acted, and the weight of testimony on those two vital points were entirely overlooked. We think it clearly proved that the rock underlying, at least a large part of the lands in question, is a bituminous shale, and that oil does at times rise from it to the surface. Assuming that oil was put upon this land at any time to heighten or renew these appearances, the question is was it done during the time of the alleged partnership, by the defendants, or at other times or by other parties, or their procurement. There is no proof that Reed, or DeWint, or even Jones caused this to be done, during that time, except the testimony of Higgs, connecting them with his story. His story of his own wicked acts may be generally true, except as to the dates, and the persons who accompanied or procured him. But it must be exactly correct, not only as to the men for whom, and with whom he

acted, but as to specific dates, or it is not evidence against these defendants, to justify this heavy verdict against not only those whom he alleges to be guilty, but against one whom he does not dare to attack. Higgs is discredited in every way that a witness can be. He has always lived in Glenham, and his neighbors, without any attempt to show the contrary, declare he is not to be believed on oath. His utter want of veracity is notorious; and he is utterly discredited by the material variations and contradictions in his story, as he has told it at different times. He has given his story three times under oath: 1st. In the affidavit the plaintiffs' attorneys obtained from him to procure the order of arrest, sworn to on the 17th of March, 1866. 2d. On the examination before S. W. Fullerton, as referee, on a motion to reduce bail, taken in July, 1866. 3d. In his examination and cross-examination on the trial.

II. The judge erred in refusing to dismiss the complaint as against Dickerson, who was not shown or claimed to have had any connection with the declarations of Reed, or the acts of Higgs, or even any knowledge of them; and in holding Dickerson liable for a fraud if any were perpetrated by Jones or Reed or by Higgs under their direction.

III. The defendants as joint owners of these lands, and jointly concerned in the adventure or speculation of obtaining refusals, leases and conveyances of lands supposed to produce oil, and selling them, were not at any time partners, so as to make them liable for the torts or the contracts of each other as partners in mercantile firms are. (4 *Edw. Ch.* 352. 4 *Mass. Rep.* 424. 7 *Bosw.* 418. 15 *John.* 159.)

IV. It was therefore erroneous to refuse to dismiss the complaint as to Dickerson. It was also erroneous to instruct the jury to find a verdict against Dickerson, as well as against Read, if Jones employed Higgs to put oil on the land, or against Dickerson if Reed or Jones employed

him for that purpose. It was erroneous to refuse the instructions asked at folios 1129, 1130, 1132, 1133, viz: That every one of the defendants must be acquitted by the jury, and have a verdict in his favor unless the jury believe that he personally made, or procured to be made, the false representations charged in the complaint, and thereby induced the plaintiffs to make the contract with the defendants. That the jury must find a verdict in favor of the defendant Dickerson, unless they believed that he personally knew, or consented to, some fraudulent act or representation to the plaintiffs which procured the sale. That the jury must find a verdict in Dickerson's favor, there being no evidence whatever that he had any concern in, or knowledge of, any fraudulent acts or representations whatever.

These defendants were not partners, and liable for the acts of each other under the law merchant, at any time.

V. But the judge at the trial not only held that the defendants might be and actually were "partners" so as to be subject to the mercantile law of partnership, he held that such partnership in real estate, could be created by parol, that the jury might believe it was created in September, 1864, as to all the defendants, and hold Dickerson liable for Jones' acts between that time and November. We submit this was clearly wrong. (*Story on Part.* § 83. 1 *Sumn.* 173. 3 *Denio,* 125.)

VI. The statement of Jones as to the existence of a "partnership," or any agreement among the defendants as to these lands, in September, obviously, refers to himself and Reed only, and to other conversations. Nothing was done by anybody until the 20th of September. And then Jones saw no one but Reed. The loose statement of Jones is based upon what took place between him and Reed, as detailed in case. Dickerson says he never saw De Wint until December, 1864, and he never saw Jones

at all, nor was Dickerson's name mentioned by Reed. Yet on this foundation was the structure of a partnership erected, on which all these defendants were charged with the acts of Higgs and Jones; if the jury believed them to have committed fraud in September, October or November, 1864.

VII. The judge erred in refusing to charge that Dickerson was only liable for his own acts or Reed's.

VIII. This action is not to recover back the money paid by the plaintiffs, or upon any equitable ground, for a failure of consideration or the like. It is an action for fraud. It can only be sustained by proof of a fraud by every defendant, or of a fraud for which each is liable.

IX. The judge erred in admitting evidence of Reed's statements and representations to the plaintiffs after the sale had been made, and the transaction ended as to the defendants.

X. It was a still more grievous error, and one which bore even more hardly upon the defendants and especially upon Dickerson, to allow Higgs to testify to what he did after the sale, and when the lands on which he says he was operating, belonged to the plaintiffs. This was done against our objections and exceptions, and unquestionably the greater part of the testimony upon which the jury found their verdict was this illegal evidence.

XI. This witness had been, according to the theory of the plaintiffs, an agent employed by one partner, without the knowledge of another. He was allowed to testify to what he did to produce a fraudulent appearance of oil on these lands, after the partnership had closed, after the lands had been sold, and when, if any cheat was to be accomplished, it was for the benefit of the plaintiffs, who had become owners of the land, organized a company upon them, and were endeavoring to sell stock. The greater part of the acts testified to by Higgs were stated by him to have been done in January, February or March,

1865, three months after the sale. He was not our agent then on any theory of the case. In fact the plaintiffs have themselves been sued for these very acts by parties who say they were induced by such exhibitions in December, January, February or March, to buy shares in the plaintiff's oil company, and yet all this went to the jury to convict us of fraud.

XII. This evidence was inadmissible. No authority and no principle can be found to justify it. It was not proving contemporaneous frauds upon these persons by the defendants, and with the same motive as would lead to the acts complained of. (*Cary* v. *Hotailing,* 1 *Hill,* 311. 40 *Penn. R.* 9. 37 *id.* 350. 47 *Maine R.* 417.) It was not evidence of the motive or purpose of the defendants, because the acts were not their acts, and the purpose could not have been the same. If such evidence were admitted, it would enable a purchaser in such a case as this to use his own frauds to make out an action against a perfectly innocent man. Such is not the rule of law. (*See* 23 *Barb.* 561; 3 *Kern.* 577; 28 *N. Y. Rep.* 486, *per Denio, J.*)

XIII. The error of admitting this evidence was not cured by subsequently directing the jury to disregard it. (7 *Wend.* 193. 4 *Denio,* 153. 32 *Barb.* 25. 19 *N. Y. Rep.* 299.)

XIV. The evidence admitted at folio 610, was not only objectionable because it was evidence of an act or declaration after the sale. It was also inadmissible as to any of the defendants, because it was proving a declaration of Higgs, and that too in the absence even of Jones. Thorn was allowed to swear that Higgs in the absence of Jones showed him, Thorn, money—in effect stating he had received it from Jones.

XV. The plaintiffs were improperly allowed to ask Jones upon cross-examination if he had sworn so and so in an affidavit, without placing the affidavit in his hands and putting it in evidence. It was of no consequence that

the affidavit was objected to as evidence. The objection was not sustained. But because it was made, the plaintiffs were allowed to examine the witness in an improper manner. To contradict a witness by a former written statement a party must first call his attention to such statement, that he may have an opportunity to explain it, but second, to prove the witness' statement, he must put in *evidence the paper itself*. It is the best evidence.

XVI. This verdict was obtained upon evidence of what Higgs did in September, before Dickerson had any interest in the matter, and two months before the lands were shown to the plaintiffs, and in January, February and March after the sale had been made. It was the evidence of a witness utterly corrupt and untrustworthy, who in his affidavit made for the plaintiffs, says that Reed talked to him about putting oil on the lands at the first interview he ever had with him; which at the trial he did not pretend was the fact; and in his deposition taken by the defendants says that he did not, down to November, have any reason to believe that Reed or any one but Jones know any thing of his fraud. No latitude should have been allowed with such a witness in such a case as this.

*Homer A. Nelson,* for the respondents. I. The evidence offered of acts of the defendants in depositing oil on the lands after the agreement for the sale of "the refusals," was clearly admissible. Although the action was brought against several defendants, a recovery could be had against one of them only, or against any or all of them shown to have been guilty of the fraudulent acts. 1. An action will lie against a party for fraudulently inducing one to buy the land of another. Fraud or deceit accompanied with damage, is a good cause of action. (3 *T. R.* 51. 1 *East,* 318. 2 *id.* 92. 3 *Bos. & P.* 367. 5 *id.* 241. 1 *Camp. N. P.* 4, 277. 1 *Day's Cas.* 22. 6 *John.* 181. 13 *id.* 224. 7 *Wend.* 380. 7 *N. Y. Rep.* 352.) 2. Fraud

and deceit in the defendants and damage to the plaintiffs are sufficient, though no benefit accrue to the defendants. The action will lie whenever there has been an assertion of a falsehood, with a fraudulent design, as to a fact, when a direct and positive injury arises from such assertion. (7 *N. Y. Rep.* 352. 7 *Wend.* 9. 11 *id.* 375. 14 *id.* 126. "It is not necessary that the defendant should have had any particular individual in view as the person who was to be defrauded. The defendant is answerable for the use which was made of the letter, although he might never have heard of the plaintiff until after the fraud was perpetrated." (*Per Walworth, Ch. in Addington* v. *Allen,* 11 *Wend.* 374.)

II. Fraudulent representations or deceit, accompanied by damage, constitute a good ground of action in respect to a sale of lands, as much as in respect to personal property. (1 *Comst.* 308. 13 *John.* 325, 402. 7 *Wend.* 380, 386. 17 *id.* 193. 5 *Abb. Pr.* 162. 15 *How. Pr.* 48. 19 *N. Y. Rep.* 464. 5 *Hill,* 63. 23 *Wend.* 260. 9 *N. Y. Rep.* 183.) False representations made before the sale is so far concluded as to be binding, in order to induce the buyer to go on and consummate the bargain, are admissible in evidence. (*Haght* v. *Hayt,* 19 *N. Y. Rep.* 464.)

III. The evidence given on the trial justified a verdict for the plaintiffs; and the credibility of the evidence was a question of fact for the jury to determine. Every charge in the complaint is fully proved. A verdict must be most clearly and manifestly against evidence to justify the court, in an action like this, in setting it aside. (*Sutherland, J. in Culver* v. *Avery,* 7 *Wend.* 384.)

IV. On the trial, the presiding justice laid down the rule of damages, and no objection or exception was taken thereto.

V. There may be a partnership in the business of buying and selling real estate merely. (*Sage* v. *Sherman,* 2 *N. Y. Rep.* 417. *Patterson* v. *Brewster,* 4 *Edw.* 352.)

Chester v. Dickerson.

VI. In *Hawkins* v. *Appleby*, (2 *Sandf.* 421,) a partner in a firm was held liable for the frauds practiced by a copartner in the transaction of the partnership business, although he was entirely ignorant of such frauds, and derived no benefit therefrom. In *Sweet* v. *Bradley*, (24 *Barb.* 549,) a partner was held liable for false representations of his copartner. One partner is liable in tort for the negligence of a servant employed and paid by one of them exclusively, by which a third person is injured, while such servant is engaged in the business from which, as partners, they were to derive a profit. (18 *Wend.* 185, 186. *Cotter* v. *Bettner*, 1 *Bosw.* 490.)

*By the Court*, J. F. BARNARD, J. This action was originally commenced against four parties. One, (De Wint,) died before the trial, and the issue was continued against the three present defendants, Dickerson, Jones, and Reed. The action was for a wrong, for damage occasioned by reason of the plaintiffs having been cheated and defrauded in the purchase of lands of the defendants. The fraudulent practice being charged to be the placing of petroleum oil by the defendants on the lands, thereby inducing the belief that the oil was the production of the lands. There are two leading principles to be kept in mind at the beginning of the examination of the points presented by the appeal. First, that the defendants committing a fraud like this are jointly and severally liable; evidence, therefore, which implicates one and not all is admissable, and, if sufficient, will justify a verdict against one alone. The second principle is that a person committing a wrong like this is liable to whomsoever suffers by the fraud; no matter whether there be any privity between the person perpetrating the fraud and the person receiving the damage by reason of it. Applying these principles to this case it follows that Jones, who is proved to have personally assisted in creating these fraudulent

appearances before his partnership with the other defendants was formed, is liable to the plaintiffs if they were deceived by the fraud, even if he passed the title to others and they sold to the plaintiffs. The evidence, then, that Jones did this thing in September, 1864, and shortly before the other defendants became interested in the lands, was admissible as to him. Between the 1st and 20th September, 1864, Reed appears upon the lands with Jones, he promises Higgs a dollar and a half a day, and $5000 "if the thing worked as well as Jones thought it would," and that he "should have that amount of money if the land sold in a good condition, which he and Jones thought it would." This was at least some evidence against Reed, and was admissible as against him. The deceptive appearances were at short intervals created by Higgs, acting under direction of Jones, and perhaps Reed, until the 12th December, 1864, when the plaintiffs purchased the options of the defendants, that is the right to buy the lands on which these appearances had been created, for $39,000. Subsequently the plaintiffs did acquire the lands from the owners, taking the last title early in April, 1865. Dickerson and perhaps Reed are to be charged upon another principle of law. The three defendants, survivors of the deceased De Wint, were partners in these lands. The written agreement is dated 28th November, 1864, and has been expressly adjudged by the court to be a partnership agreement with lands for its subject. (*Anthony* v. *Dickerson et al. unreported.*) Jones testified on the trial that the agreement existed in parol as early as September, 1864; Reed was called as a witness and did not deny it; Dickerson was subsequently sworn as a witness, and did not deny it. He does say he had not personally seen Jones and De Wint until some time after the writing was in fact signed, but the agreement shows it was signed at different places, and with different witnesses, Reed and Dickerson signing in presence of one witness, and De Wint

and Jones signing before another witness. That it had existed before this in parol. Neither of the parties who could deny the fact did so. Surely under this state of the evidence it could safely be said that the parol agreement existed as early as September, 1864, and the charge of the judge, which left it to the jury to fix the time during which this agreement existed, in parol, if at all, before the writing, was not erroneous. The principle of law which is to charge Dickerson is, that he, one of the parties, is liable for the acts of his partner Jones, while the partnership existed, whereby these deceptive appearances were created, upon the subject of the partnership and whereby the partnership realized the proceeds of the fraud. And this principle is good as well while the agreement of partnership was in parol as while it was in writing. (*Sage* v. *Sherman,* 2 *Comst.* 417. *Smith* v. *Tarlton,* 2 *Barb. Ch.* 336. *Sweet* v. *Bradley,* 24 *Barb.* 549. *Hawkins* v. *Appleby,* 2 *Sandf.* 421.)

The remaining question in the case is, the evidence admitted of the acts of Jones after the plaintiffs purchased of the defendants. A statement of the evidence will show this was not erroneous. The defendants sold on December 12, 1864, to the plaintiffs the options only, that is the defendants sold to the plaintiffs for $39,000 the right to buy these lands, which they then had, the plaintiffs having to pay for the lands to the owners. The plaintiffs did not get the last of these lands until April, 1865. Could they not show that Jones continued to plant this oil up to the time they parted with the last dollar they did part with upon the faith and credit of the false appearances? Besides, there is no evidence when the plaintiffs did convey to this petroleum company. The company was formed, it is true, about the last of December, 1864, but the date of the conveyance to the company is nowhere given; in fact is not proved at all by any conveyance or writing; but a conveyance, if one was ever made, could not have been until after

Chester *v.* Dickerson.

the plaintiffs got a title themselves, which was not until after the date of the last act was proved by Higgs. The charge in reference to the time when the parol agreement existed was right. Jones had fixed the date in general terms. Reed and Dickerson had not denied the time. Reed testified that on the 20th September he had not become interested in the lands, but that Jones was trying to get him interested. Reed testified, further, that on the 20th November, he then having become interested and having obtained nearly all the options, he told Higgs "he would drive." The court told the jury that they could fix the date of the parol agreement. That Jones' testimony had fixed such an agreement in general terms, but that Reed denied, substantially, the partnership before the 20th of September, and admitted it substantially on the 20th of November. That the jury might take this testimony into consideration in fixing the time, and not that they could take into consideration Reed's acts as making a partnership for Dickerson. No exception was made to this part of the charge by the very able counsel who conducted the trial for the defendants. I see no error upon which this judgment should be reversed. It should be affirmed, with costs.

GILBERT, J. (dissenting.) The rule of law which makes one innocent partner liable for the frauds of his copartners, committed during the existence of the copartnership, is firmly established. It applies as well to partnerships created for the purchase and sale of lands, as to ordinary mercantile partnership. The principle on which the liability rests, namely; that, "seeing somebody must be a loser by this deceit, it is more reason, that he that employs and confides in the deceiver should be a loser, than a stranger," equally governs both kinds of partnerships. (*Per Holt, Ch. J. Hern* v. *Nichols,* 1 *Salk.* 298. *Story on Part.* § 108.)

The objection was taken that a partnership in lands,

could not be created by parol. It has been repeatedly held in England, that it may be so created. (*Forster* v. *Hale,* 5 *Ves.* 309. *Essex* v. *Essex,* 20 *Beav.* 449. *Dale* v. *Hamilton,* 5 *Hern.* 369 ; *aff.* 2 *Ph.* 266. *Cowell* v. *Watt,* 2 *H. & T. W.* 224.) But the authority of these cases, has been shaken to some extent by the decision of the lord chancellor in *Caddish* v. *Simpson,* (2 *DeG. & J.* 52.) *Story,* in his commentaries on *partnership,* says : " Such a contract must from the nature of the case, and the positive rules of law, and the statute of frauds, be reduced to writing, and then the stipulation of the parties will constitute the sole rule, to ascertain their intention, and to enforce their respective rights." (§ 83.) I am not aware of any case in this state, in which this question has been distinctly decided. The judgment of Chancellor Walworth in *Smith* v. *Tarlton,* (2 *Barb. Ch.* 336,) is, however, an authority to show that all partnerships may be created by parol; and I can perceive no reason for any distinction founded on the mode of investment of the capital, or funds of the partnership—whether in merchandise or lands. The effect of the contract is to establish the legal relation. The substance of this is, the right to share profits, and the liability to bear losses. All the rest is incidental. If the partnership property consists of land, the legal title to it may be vested in all the partners as tenants in common, or in one or more of them, for the benefit of the partnership. In the latter case, it will be treated in equity as personalty. My opinion, therefore, is that the judge ruled correctly on this subject.

Upon the trial, the plaintiffs proved the partnership between the defendants by a formal agreement, dated November 28, 1864. The defendant Jones was examined as a witness for the defendants. On his cross-examination, this occurred, viz : " Q. When did this partnership operation of yours first exist between you, Reed, Dickerson and De Wint? A. I think it was in the fall. Q. How

early in the fall? A. September. Q. It was not put in writing until sometime afterwards, was it? A. No sir. Q. Did it exist in September, you think? A. Yes sir." No other evidence of the existence of a partnership between the defendants was given. The defendant Dickerson afterwards testified, that he never saw his co-defendant De Wint until December, 1864; that he never saw said Jones at all, and there is no evidence, showing that the name of Dickerson was mentioned in connection with any of the transactions in controversy, before the making of' the written agreement of partnership. It is also satisfactorily proved that Mr. Dickerson did not act, in respect to the partnership, or the business thereof, and that he did not in any manner hold himself out, and that he was not held out by others, as a partner, before the date of the written agreement aforesaid.

The court charged the jury, that this partnership was a thing entirely in doubt; that there was no proof when this partnership was formed; the written paper is dated November, 1864; that there was the general proof of Jones, that it existed some time before, and then submitted it to the jury to say, when the partnership was formed, at the same time telling them that they might consider the acts of Reed alone, in determining that question. I am of opinion, that this instruction was erroneous.

The question, whether a partnership does, or does not subsist between any particular persons, is a mixed question of law and fact, and not a mere question of fact. The existence of a partnership can be established only by showing, either a distinct agreement, in so many words, or an agreement to share profit and loss; or an agreement to share profits; or such a state of things as is sufficient to establish a *quasi* partnership; namely, a holding out as a partner, or an actual sharing of profits during the disputed period. (1 *Lindley on Part.* 847.) It cannot be established by the conduct or declarations of any other

person than the defendant sought to be charged. (*Collyer on Part.* § 776. *McPherson* v. *Rathbone,* 7 *Wend.* 216.)

The appeal being from an order refusing a new trial, as well as from the judgment, this error is properly before us for correction, although no specific exception to the ruling was taken. (*Keyes* v. *Devlin,* 3 *E. D. Smith,* 523. *Macy* v. *Wheeler,* 30 *N. Y. Rep.* 235.)

The point was fairly raised, by the motion for a nonsuit and by the defendants' request to the court, to charge the jury that no partnership existed between the defendants before the execution of the written agreement, dated November 28, 1864, which could make any of the defendants liable for the others. The court refused the nonsuit, and the request to charge, and the counsel for the defendants excepted to such refusal. The exceptions, I think, are good. The testimony of Jones is, that partnership *operations* commenced in September, but it discloses no fact justifying the inference of the actual making of a partnership agreement prior to the written contract, or any fact implicating the defendant Dickerson in the slightest degree, in any such antecedent relation. Especially does it not warrant the charge of the judge that the proof of Jones was that it existed some time before the written agreement. At most, his evidence amounts to the expression of an opinion or conclusion of his own, without any apparent basis of fact. The evidence of Dickerson, on the contrary, shows that the partnership could not have existed prior to the written contract. No inference can be drawn from his omission to contradict Jones more explicitly, because he could have had no personal knowledge of the "*operations*" to which Jones' testimony related. (*Taylor's Ev.* § 581.) There was nothing therefore, to warrant the submission to the jury of the question whether a partnership existed prior to the written agreement in which Dickerson was a partner, and the court should have decided it as a question of law. At all events, it does

Chester *v.* Dickerson.

not apear but that the jury found Dickerson was a partner before November 28, 1864. There is no evidence to support such a verdict, and it ought, therefore, to be set aside. (30 *N. Y. Rep. sup.*)

That the errors committed were of vital importance, is manifest. The alleged fraud consisted in creating false and deceptive appearances, upon the lands purchased by the plaintiffs. They could not have been deceived, before they saw the land. The evidence of the plaintiffs shows that none of them saw the land before the 8th or 9th of December, being at least ten days after the date of the agreement of partnership, and there is no evidence which proves that any of the alleged fraudulent acts were committed between the date of the partnership agreement, and the time the plaintiffs saw the land. On the contrary, I think it more probable that all the frauds *alleged* were perpetrated before the making of the partnership agreement, and that Mr. Dickerson was cheated by the same acts that deceived the plaintiffs. Indeed the formation of a company, in which Mr. Dickerson and his associates retained stock, was in substance only an enlargement of the partnership by the addition of new members, and Mr. Dickerson was, no doubt, as much deceived when he took his stock, as any of his co-corporators.

I also think the judge erred in admitting testimony by the witness Higgs, as to what he did upon the lands, after the plaintiffs had purchased them; and that the error was not cured by the judge instructing the jury that the defendants were not liable for the acts of Higgs after such sale. He should have stricken the evidence from the case, and told the jury distinctly to disregard it. Not having done so, the legal intendment is, that the jury considered it for some purpose, and that this injuriously affected the verdict. (*People* v. *Parish*, 4 *Denio*, 153. *Erben* v. *Lorillard*, 19 *N. Y. Rep.* 299. *Green* v. *Hudson River R. R. Co.*, 32 *Barb.* 34.)

The only remaining question on this branch of the case is, one which, so far as the case shows, was for the first time presented on this appeal, namely: whether the receipt by the defendant Dickerson, of his share of the amount paid by the plaintiffs, on the purchase of the property, makes him liable, on the principle, that by so doing he adopted and ratified the fraud by which the plaintiffs were induced to make such purchase. This question is, perhaps, not properly before us. Still I am of opinion that that fact alone does not make him liable. A ratification is, no doubt, equivalent to a prior command, but no one can ratify what he does not know. To make an innocent defendant answerable, on the ground of ratification, it should at least appear, that he knew of the fraud, when the proceeds of sale were paid over, or refused to return them after it had been discovered. There is no such evidence in the case, but the fact of such knowledge on the part of Dickerson, is affirmatively disproved. He did, it is true, ratify the sale; but the fraud is no part of the sale—no part of the contract—it is collateral to it. It might have been committed by some one in no way connected with the defendants. But nobody would contend that the owner, in such a case, by selling to a buyer, so influenced, would be responsible for the fraud. Nor do the cases, which hold that when an authorized agent, acting within the scope of his authority, perpetrates a fraud for the benefit of his principal, and the latter receives the fruits thereof, he is liable as for his own wrong, (*Bennett* v. *Judson*, 21 *N. Y. Rep.* 238; *Elwell* v. *Chamberlin*, 31 *id.* 611,) apply to the case before us, so far as the defendant Dickerson is concerned; because, as before stated, the evidence does not establish that the fraud in question was perpetrated *by an authorized* agent; in other words, that it was committed during the existence of the partnership. (*Doggett* v. *Emmerson*, 3 *Story*, 700. *Brass* v. *Worth*, 40 *Barb.* 654. *Smith* v. *Tracy*, 36 *N. Y. Rep.* 79.) And the verdict may rest wholly upon

the erroneous rulings stated. Again: sales vitiated by fraud are voidable or void at the election of the party defrauded. The mere receipt of the fruits, therefore, creates no liability. It is the subsequent attempt to retain scuh fruits which makes the person so acting liable. I think, therefore, that the principle that no one can profit by a wrong without becoming a wrongdoer, ought to be limited, not by the amount paid to the partnership, but by the amount actually received by each individual. When, as in this case, such attempt is made, if made at all, after the partnership has ended, and the moneys have been distributed, some to guilty, and some to innocent partners, it would seem to be wrong to hold the innocent members liable for the subsequent conduct of persons no longer associated with them. (*Cases supra.*)

Without considering the other points presented, I am of opinion, that for the errors mentioned, the judgment and order, refusing a new trial, should be reversed, and a new trial granted, with costs to abide the event.

Judgment affirmed.

[KINGS GENERAL TERM, February 16, 1868. *Lott, J. F. Barnard, Gilbert* and *Tappen,* Justices.]