## WILLIAM B. FAIRCHILD and others *v.* EGBERT H. FAIRCHILD and others.

1 *R. S.,* 728, §§ 51 *and* 53 — *cases not included in* — *real estate purchased by one partner for firm* — *how treated in equity* — *in whom title to, is vested* — *Mortgage* — *when instrument does not operate as.*

Where one member of a firm was authorized by the other partners to purchase and take title to certain real estate for the benefit of the firm, but they did not authorize him to take title absolutely in his own name without any recognition of their interests therein, and such partner purchased the real estate, paying therefor out of the partnership funds, but took a deed in his own name: *held,* that a resulting trust was thereby created in favor of the other members of the firm.

Where one partner takes a deed in his own name, paying the purchase-price out of a fund belonging to all the partners jointly, for the benefit of all, and without any ulterior motive other than to possess and enjoy the property, a resulting trust in favor of the other partners arises, which is not affected by section 51 of 1 Revised Statutes, 728. (Per Brady and Daniels, JJ.)

Section 51, 1 Revised Statutes, 728, does not apply to land bought by the joint funds of a partnership, as such land is treated in equity as personal property. (Per Brady and Daniels, JJ.)

*Cox* v. *McBurney* (2 Sandf., 561) overruled.

Property so purchased is the joint property of the members comprising the partnership, and not that of him in whose name it is bought or to whom the transfer was made. (Per Brady and Daniels, JJ.)

Where one of several tenants in common, in order to secure an existing indebtedness, executed an assignment of all "her right, title, interest, estate, property and demand as legatee, devisee, heir at law or otherwise, of, in, and to the estate, real and personal, of her late father," and "of the rents, profits and income thereof," to be held until the assignees should realize therefrom a sum therein specified, the instrument containing no power of sale: *held*, that the instrument did not operate as a mortgage, but as an assignment of the interest of the grantor, and that the alienees took only what their grantor had the power to transfer, and nothing more.

Appeals from a judgment entered upon the decision of Justice Van Brunt, rendered at the Special Term.

*Edward C. James*, for the plaintiffs.

*Wm. F. Shepard* and *Marsh & Wallis*, for the defendants Walker and Coleman.

*L. Hasbrouck, Jr.*, for the defendant Brown.

*Edgar S. Van Winkle*, for the defendants Beach and Borrowe.

Brady, J.:

This action was brought by the plaintiffs, who are children of Egbert N. Fairchild, and some of his heirs at law, for the partition of real estate in the city of New York. The following facts appear to be established by the testimony given upon the trial :

Egbert N. Fairchild, Stephen B. Walker, Isaac D. Coleman and Henry J. Brown, in 1858, formed a copartnership for the purpose of constructing the new reservoir in Central park, which was not to be terminated by the death of any partner, but to continue until the work was completed. The firm name was Fairchild, Walker & Co. They began and completed the work, and, while it was in progress, took other contracts and did other work on firm account, in the same manner as the reservoir contract. In January, 1860, Gustavus A. Sacchi was the owner of the real estate and premises described in the complaint, situate on the Harlem river, and offered

the same for sale at auction. The advertisement was seen by Fairchild, Walker & Co., and the purchase of the land was talked over by them. They were then contemplating obtaining the contract for building the canal from the Harlem to the Hudson river, and this property they thought would be available for their use in that connection. They subsequently obtained a charter for the work. Fairchild, Walker and Coleman went up to look at the property, and concluded to buy it for firm use.

Fairchild was authorized to attend the sale and purchase at his discretion. Walker, however, attended the sale, and bid in the property, giving the firm name to the auctioneer, as the name of the purchasers. On the 24th January, 1860, a deed was executed and delivered by Mr. Sacchi, conveying to Egbert N. Fairchild the premises in question for the consideration of $9,930, which deed was duly recorded. This deed was taken in the name of Egbert N. Fairchild, alone. The other members of the firm consented, and authorized said Egbert N. Fairchild to take title for the firm. But they did not consent or authorize him to take the title absolutely in his own name, without recognition of the other members of the firm. And they did not, nor did either of them, know that the deed to him was absolute, without recognizing and protecting the rights of the firm, and of the several members thereof. These lands were paid for out of the copartnership funds. The taxes and incumbrances thereon were paid out of the copartnership funds. The lands were purchased for the benefit of the copartnership. It was always intended and understood by and between the members of the partnership, that the same should be copartnership property. Fairchild always said so. All the transactions and payments on account of this property were entered on the firm books, the payments being charged to "real estate" account. Walker, Coleman and Brown had nothing to do with keeping the firm books, which were under the charge of Egbert N. Fairchild, who had charge of the financial business of the firm. The lands were used by the firm, and improved and occupied by them from the time of the purchase. Fairchild, individually, never had any thing to do with them. Fairchild and Brown died in 1864, Fairchild leaving eight children, as specified in the complaint, and Brown leaving his widow, Cornelia J. Brown, and three children, David W., Henry

V., and Harriet Brown. Harriet afterward died in her infancy, leaving her mother and brothers her heirs.

A part, only, of the premises has been sold. It also appeared that on the 31st of December 1866, the defendant Julia A. Schreimer (one of the children of Fairchild, and one of his heirs), and her husband executed to the defendants, Beach & Borrowe, an assignment of all her "right, title, interest, estate, property and demand, as legatee, devisee, heir at law, or otherwise, of, in and to the estate, real and personal, of her late father, Egbert N. Fairchild," "and the rent, profits and income thereof," to hold until Beach & Borrowe should realize therefrom $2,250, and costs and charges, in consideration that they should release her husband, Horace A. Schreimer, from arrest on a civil action, which said sum has not yet been realized by said Beach & Borrowe.

The court below held on the facts, that the real estate mentioned belonged to the firm named, but that the assignment mentioned was a mortgage, and covered the undivided one-eighth part of the premises in question, and that if the share of Mrs. Schreimer therein (four one-hundredths) was not sufficient to pay said indebtedness to Beach & Borrowe, it should be assessed *pro rata* upon the remaining ninety-six one-hundredths, not to exceed, in the whole, one-eighth of the *whole real estate*.

The plaintiffs appealed from the whole judgment.

The defendants, Coleman, Walker, and the representatives of Brown, appealed from that part which holds that Beach & Borrowe held a mortgage upon the undivided one-eighth of said premises, and which directed payment thereof out of any thing more than Mrs. Schreimer's four one-hundredths.

Many exceptions were taken during the trial, but they related chiefly to evidence tending to show that the property in question belonged to the firm of which Fairchild was a member when the purchase was made.

The facts set out in reference to the partnership and the general manner in which its affairs were conducted; the relations of the parties; each to the other; the acts and the admissions or statements of the partners *inter sese ;* their books and the entries in them, which were competent items of proof on the issue presented or claim made by the defendants, the surviving partners, and the defendants, the

representatives of the deceased partner, by the proof of which the controlling facts on behalf of Walker and Coleman and the heirs of Brown were developed, were objected to and exceptions taken almost at every step.

One of the counsel, in his points, states that the case is "bristling" with the plaintiffs' exceptions; and although the expression employed may be infelicitous, it indicates the energy and determination with which the plaintiffs' counsel essayed to prevent the exposition of the fact that Fairchild, deceased, was not the absolute owner of the property in question. The exceptions, therefore, do not require examination in detail, because, assuming the facts established, namely, that the property was bought for the firm by Fairchild, and with its money, and that the deed was taken by him in his own name, without the consent or knowledge of the other partners, the judgment of the Special Term cannot be disturbed so far as it affects the alleged combined ownership. The findings upon these facts are abundantly sustained. They are established by a combination of facts and circumstances which are quite satisfactory, and therefore conclusive. The appeal consequently presents for consideration questions of law only.

It is urged on behalf of the plaintiffs, that under the provisions of the Revised Statutes (1 R. S., p. 728, § 51) no resulting trust in favor of the other members of the firm existed; but that section is modified by section 53, which declares that it shall not apply to cases where the alienee named in the conveyance shall have taken the same as an absolute conveyance, in his own name, without the knowledge or consent of the persons paying the consideration. The facts being as stated, the other members of the firm were protected by this modification. (*Foote* v. *Bryant*, 47 N. Y., 544.)

There is, however, another view of this case in this connection which may well be taken. Section 51, before alluded to, provides that where a grant for a valuable consideration shall be made to one person, and the consideration therefor shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made, etc. This is not the precise case, therefore, contemplated by the statute. The general object in view when the statute was enacted, was to prevent frauds; and the design of section 51 was to hinder the transfer to one who paid no considera-

tion for it, with the understanding that it was to be held by him for the benefit of one who did; a process by which frauds might easily be consummated.

Here, as we have seen, the deed is to one who paid the consideration out of a joint fund of which he owned a share, but for the benefit of all, without any ulterior purpose other than to possess and enjoy the property. Each of the partners was interested *in the whole fund* and *in the whole estate*, and the purchase was for all of them. In such a transaction the court will not be astute to force it within the penalty of section 51. To prevent fraud in such a case would be to declare it out of the purview of the statute. The court of last resort has not failed to indicate a tendency to limit its operation in proper cases. (*Day* v. *Roth*, 18 N. Y., 448; *Lounsbury* v. *Purdy*, id., 515; *Siemon* v. *Schurck*, 29 id., 598; *Foote* v. *Bryant, supra.*) In *Lounsbury* v. *Purdy* the purchaser consented that the deed should be taken in the name of her brother, but not that it should be absolute. She intended that it should be given to him in some way for her benefit. The court declared that a trust resulted in her favor. In *Siemon* v. *Schurck* Judge HOGEBOOM said that, "if it does not appear that the absolute character of the deed, upon its face, was known to *or designed* by the person paying the consideration, it will be presumed that it was so written by fraud or mistake, and without any intent to violate the statute." "This is clearly," said he, "the effect of the cases of *Day* v. *Roth* (18 N. Y., 448) and *Lounsbury* v. *Purdy* (id., 515)." It was also suggested by him in that case, that the prohibition contained in section 51, referred to herein, was not necessarily applicable to a trust for the benefit of a third person, in whose favor, for family or other lawful and sufficient reasons, it was deemed proper to make some provision. This case is one which is not strictly within the terms or spirit of the statute. It is not that of a secret trust for any purpose; the parties connected with the transaction were in no embarrassment; they were prosperous, and able to meet all their obligations, and the object of the purchase was one connected with their joint business. The mischief which the statute assailed was not in contemplation of the parties. The consideration was not paid by another, but by the alienee and his associates. He did not pay it all, but a part only,

and it is clearly not within the express terms of the statute ; and it is equally clear that it has not created an estate to prevent which that law was passed.

There is still another view to be taken of this case, and it is, that land bought by the joint fund of a partnership, as in this case, is to be treated in equity as personal property, and goes to the personal representatives of a deceased partner. (*Collumb* v. *Read,* 24 N. Y., 505 ; *Buchan* v. *Sumner,* 2 Barb. Ch., 165 ; *Chester* v. *Dickerson,* 52 Barb., 349, 362 [affirmed in Court of Appeals] ; *Hiscock* v. *Phelps,* 49 N. Y., 97–103 ; *Sage* v. *Sherman,* 2 N. Y., 417.) This principle itself withdraws the land in question from the application of section 51. The case of *Cox* v. *McBurney* (2 Sandf., 561) to the contrary, is not regarded as in accord with general current of authority.

There is yet another view of this case, and that is, that property, purchased with copartnership funds for the firm, is the joint property of the members comprising it, and not that of him in whose name it was bought, or to whom the transfer was made. The deed to Fairchild was, therefore, in legal contemplation and effect, a deed to his associates as well. Although this rule might not be available against innocent purchasers without notice, it holds firm against the partners and their heirs, the latter succeeding only to the rights of their ancestor. The courts have applied this doctrine collaterally, because it has been held that if a member of a partnership, dissoluble at pleasure, privately obtain a renewal of a lease of part of the partnership premises, such lease is partnership property. (Montague on Part., vol. 1, p. 208, and cases cited.) The views thus expressed are conclusive of the correctness of the judgment rendered declaring that the heirs at law of Egbert N. Fairchild were entitled only to the share he owned in the land mentioned, and renders the consideration of all other questions incidentally relating thereto unnecessary.

The remaining question relates to the paper executed by Mrs. Schreimer, and the judgment pronounced in regard to it. That instrument is not a mortgage, but an assignment in form and in legal effect. It conveys all her right, title and interest in the real and personal estate of her father, and the rents, issues and profits thereof, to have and to hold the same " until thereout the parties of

the second part shall have received the sum named, over and above the costs, charges and expenses attending the execution of the assignment, with interest thereon to date." It also makes the parties of the second part her attorneys to take possession of and to manage her share of the estate, and to receive the rents, etc. This paper is designated an assignment by the parties, as appears from its language, and was so intended by them. It conveys her interest in the property referred to, and that only, with a defeasance when the event stated occurs, namely, the payment of the sums mentioned. There is no power of sale given by it; no right is conferred to sell or dispose of the property to which it relates; and it was taken to secure or to liquidate a precedent debt. The alienees took only what their covenantor had the power to transfer, and nothing more. It was not therefore a conveyance of any thing more, and the judgment pronounced, extending it beyond that interest, was erroneous, and it must be reversed.

The judgment of the court below is affirmed in all respects, except as to that part which relates to the assignment executed by Mrs. Schreimer; as to which it is modified so as to direct the sum secured to be paid out of four one-hundredths interest owned by her at the time of its execution.

DANIELS, J., concurred; DAVIS, P. J., concurred in result.

Ordered accordingly.