BARNA C. ROUP AND JAMES INGERSOLL AS ADMINIS-TRATORS *de bonis non* OF WILLIAM INGERSOLL, DECEASED, APPELLANTS, *v.* ALONZO BRADNER AND LEWIS W. THOMPSON AS EXECUTORS OF DANIEL INGERSOLL, DECEASED, RESPONDENTS.

*Action against administrator — when barred by the six years statute — Equitable interest in real estate passes to heirs, and not to next of kin — when an administrator cannot sue for proceeds of sale.*

William and Daniel Ingersoll jointly purchased certain lands, the title being taken in the name of Daniel who agreed in writing, with William, to account to him for one-half of the rents and profits and of the proceeds of any sale thereof. William died in 1859, intestate, and Daniel and one Roup were appointed his administrators. In 1860, Daniel, as such administrator, received and appropriated to his own use certain assets of the estate of his brother. Thereafter he received money for the sale of timber growing on the land owned jointly by himself and his brother's estate, and subsequently contracted to sell a part of said land to Roup, and received a portion of the purchase-money. Thereafter, and in 1871, Daniel died and the defendants were appointed his executors. Roup died in 1874, leaving William's estate unadministered, and in February, 1877, the plaintiffs were appointed administrators *de bonis non* of William's estate. Thereafter the land contracted to be sold to Roup was sold under a foreclosure of the contract in an action brought by Daniel's executors, and the proceeds were delivered to the surrogate, to whom was also delivered the proceeds arising from a sale of the balance of the lands owned jointly as aforesaid, which sale was ordered by the surrogate to pay the debts of Daniel Ingersoll.

In an action by the plaintiffs as administrators *de bonis non*, against the executors of Daniel Ingersoll, to recover the amount of William's estate converted to his own use by Daniel Ingersoll, and one-half of the proceeds of sale of the timber, and also one-half of the proceeds of the sale of the land which latter amounts were held by the surrogate.

*Held*, that the claim against the estate of Daniel for the moneys received by him as administrator of William was barred by the six years statute of limitations.

That the moneys received by him on the sales of the land were received by him
in his individual capacity, and that as an action at law could have been main-
tained against him therefor, under his written agreement with William, the
action was barred by the six years statute of limitation.

That on William's death his interest in the land descended to his heirs-at-law, and
did not pass to his personal representatives, and that any action to recover the
proceeds arising from subsequent sales must be brought by such heirs and not
by the plaintiff.

That the heirs-at-law were entitled to one-half of the proceeds arising on the fore-
closure of the contract of sale, and one-half of the proceeds arising from the sale
of the balance of the lands, subject to any claims of the creditors of William.

APPEAL from a judgment in favor of the defendant, entered upon
the report of a referee, on a reference, under the statute, of a dis-
puted claim against the estate of Daniel Ingersoll, deceased, and
also from an order of the Special Term in Monroe county, denying
a motion for a new trial on a case and exceptions, and confirming
the report of the referee. The claim was for certain assets of the
estate of William Ingersoll not accounted for by Daniel Ingersoll,
who was one of his administrators, and also for one-half of the
proceeds of sale of certain timber, and of the land on which it
stood. The title to which land and timber was held in the
name of Daniel for the benefit of himself and William Ingersoll.

*Bingham & Sutherland*, for the appellants.

*J. A. Vanderlip*, for the respondents.

SMITH, J.:

William and Daniel Ingersoll, brothers, jointly purchased and
paid for certain land in Ossian, Livingston county, containing
128 $\frac{87}{100}$ acres. Daniel took the legal title to the whole in his
own name, and agreed in writing, with William, who was the
equitable owner of one-half, to account to him for one-half of the
proceeds of said land and the rents and profits thereof, whenever
the land should be sold. Daniel sold one-half of the land before
the death of William, and accounted to him for one-half of the
avails of such sale. William died intestate, on September 5,
1859, and in November following his brother Daniel and John
Roup were appointed administrators of his estate. In the year
1860, Daniel, as such administrator, received and appropriated to

his own use certain assets of the estate of his brother, of the value of $769.12. In the years 1860, 1861 and 1862, Daniel received from the sale of timber growing on the portion of said land remaining unsold, the sum of $278. On December 12, 1866, Daniel contracted in writing to sell and convey to said John Roup fifty acres of said land, and during his life-time he received from Roup, on said contract, timber of the value of $664.82. Daniel died March 4, 1871, and in the following June the defendants were appointed executors of his will. Roup died June 22, 1874, leaving the estate of William Ingersoll unadministered, and on February 26, 1877, letters of administration *de bonis non* of said estate were granted to the plaintiffs. On February 23, 1877, the land contracted to Roup was sold under a decree of foreclosure, in an action brought by the defendants as executors of the will of Daniel, to foreclose the contract, default having been made on the part of Roup and his heirs ; and upon the sale there was bid the sum of $292.63, besides costs, of which sum the purchaser paid $61.38 in money, and for the remainder he gave his bond and mortgage. The money and the bond and mortgage were received by the attorney of the defendants, and were delivered by him to the surrogate of Livingston county, who now holds them. The remaining $14\frac{75}{100}$ acres of said land purchased by the brothers jointly have been sold since the death of Daniel, under an order of said surrogate granted upon the petition of the defendants, as executors, for the purpose of paying the debts of Daniel, his personal estate being insufficient. The avails of such sale amounted to the sum of $269.19, one-half of which is secured by a bond and mortgage, now in the hands of said surrogate.

Upon these facts found by the referee, he decided that the claim of the plaintiffs for everything received by Daniel, as administrator, not including the avails of the real estate received by him, is barred by the statute of limitations, and that before the claim for the proceeds of the trust property can be maintained a successor should be appointed to Daniel, as trustee. He also held that the defendants are liable personally, only for anything received by them since the death of their testator; that the next of kin of William Ingersoll, or their representatives, are the

proper parties to sue for the avails of the real estate; and that causes of action are improperly united, to wit : a claim against the defendants, as executors, for personal property which came to the hands of their testator, as administrator, and also a claim against them, as executors, for the proceeds of the sale of the lands which their testator held as trustee.

It is difficult to see upon what ground a recovery can be had against the present defendants for the money received by their testator, as assets belonging to the estate of his brother, of which he was one of the administrators, and in which capacity he received the same. The moneys were received by him in 1860, and he died in 1871. His co-administrator survived him three years. No steps were taken to compel either of them to account for the estate of their intestate. Aside from the fact that there is no proof that the defendants ever received a dollar of assets from their testator, the claim is barred by the statute of limitations. It would have been barred if the testator were now living and the claim were made against him. The suggestion of the appellant's counsel, that the next of kin of William Ingersoll, as such, had no right of action against Daniel, in his life-time, does not meet the point. It is not strictly accurate as to the law, for if the administrators of William had more than sufficient assets in their hands to pay the debts, either of the next of kin, entitled to share in the distribution, could have maintained an action against the administrators to recover his distributive share, after the expiration of one year from the granting of letters, on giving a bond as required by the statute. (2 R. S., 114, §§ 9, 10.) And after the expiration of eighteen months, he might have required them to account before the surrogate. But those remedies are barred by the statute, after the expiration of six years from the time when they accrued. The limitation applies to the claims of creditors as well as to those of legatees and next of kin. (*McCartee* v. *Camel*, 1 Barb. Ch., 455; *Souzer* v. *De Meyer*, 2 Paige, 574; *American Bible Society* v. *Hebard*, 51 Barb., 552; *S. C.*, affd. June, 1869, 41 N. Y., 619, *Mem.*; *Smith* v. *Remington*, 42 Barb., 75.) The case of *Decouche* v. *Savetier* (3 Johns. Ch., 190), cited by the appellants' counsel, seems to be in conflict with the cases above cited, but it was overruled by

the same chancellor who decided it, in *Kane* v. *Bloodgood* (7 Johns. Ch., 90, 125–127). The claim was barred by the statute, long before the plaintiffs were appointed administrators *de bonis non*.

The claim for the one-half of the moneys received by Daniel for the proceeds of the sale of the land and the rents and profits of the same is also barred by the statute. Daniel received those moneys in his individual capacity and not as administrator. It is immaterial whether he received them as a trustee or not, so far as the question of the statute of limitations is concerned. In view of the agreement, by the terms of which Daniel was authorized to sell the land and account to his brother for the proceeds and for the rents and profits received by him, the money could have been recovered in an action at law upon the contract. Assuming that there was a trust which a court of equity would have enforced, there was also a concurrent remedy at law, upon the agreement, and the six years limitation applies.

There is another insuperable difficulty in the way of this part of the plaintiffs' claim. The various remedies above suggested, whether legal or equitable, followed the right to the land. It is very clear that on the death of William, his equitable title to the land then unsold descended to his heirs, and they, and not his administrators, are entitled to recover the moneys thereafter arising from the sale of the land and from the rents and profits thereof. In order to become personal estate for the purposes of administration, the money must have belonged to the decedent as personalty. Whatever once descended to his heirs cannot be diverted from them, except for the purpose of liquidating some superior claim. In accordance with this rule, it has been held frequently that surplus moneys arising from a mortgage sale, after the death of the owner of the equity of redemption, go to his heirs. (*Moses* v. *Murgatroyd*, 1 Johns. Ch., 119; *Cox* v. *McBurney*, 2 Sandf., 561; *Dunning* v. *Ocean National Bank*, 61 N. Y., 497.) It is otherwise where one having an interest in lands dies intestate after the sale thereof; his interest in the money realized from the sale is personal estate, and goes to the administrators, not to the heirs. (*Denham* v. *Cornell*, 67 N. Y., 556.)

When the action of Ingersoll and another against the present defendants, which is referred to by the respondents' counsel in

his brief, was tried at the circuit, the question whether the heirs or the administrators were the proper persons to sue for the moneys received by Daniel Ingersoll on account of the land was not fully considered, it not being essential to the disposition which was made of the case. It was there said that the plaintiffs in that action could not maintain a suit, as next of kin, to recover a distributive share of the personal estate and of the trust moneys alleged to have been received by Daniel as administrator, but that the suit must be brought by an administrator. The remark related to the incapacity of the next of kin to sue for any portion of the estate, and had no reference to the question whether the right to recover for the proceeds of the real estate was vested solely in the heirs-at-law.

The incapacity of the administrators *de bonis non*, to maintain an action for the proceeds of the real estate, is also fatal to that part of the claim which relates to the money and securities in the hands of the surrogate.

But as it may save further litigation and aid the surrogate in disposing of the fund in his hands, we express the opinion that, upon the facts now before us, the heirs of William are entitled to one-half of the proceeds of the land sold under the surrogate's order, and of the surplus made on the foreclosure sale, subject, of course, to the rights of creditors of William, if any there are.

The judgment and order appealed from should be affirmed, with costs of the appeal against the plaintiffs in their representative character, to be paid out of the goods of their intestate in their hands.

TALCOTT, P. J., and HARDIN, J., concurred.

Ordered accordingly.