CASE 66—PETITION EQUITY—SEPTEMBER 29.

# Aynesworth, &c., vs. Haldeman, &c.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

1. The interest of a married woman in real estate, the title to which had been vested in her husband to enable him to sell it for her use, is not lost by his absolute conveyance made without her consent—the husband's vendee knowing the

purposes of the conveyance, and recognizing the trust and the interest of the wife in the proceeds of the sale to be made.

2. Section 20, chapter 80, 2 Revised Statutes, 230, does not apply to personalty, nor where a conveyance, absolute in form, is taken without the knowledge or consent of the party who pays the consideration; nor where it appears that it was not the intention of the parties to divest themselves of all interest in the land, but only to effect a sale.

3. Any writing by a trustee—even a letter to a person other than the beneficiary—stating the trust, or any language clearly expressive of a trust intended by the party, will create a trust by implication.

J. W. BARR, for appellant, cited 5 *Litt.*, 74; 7 *J. J. M.*, 133; 1 *Greenleaf*, 275; 2 *Atk.*, 384; 3 *Atk.*, 8; 1 *Taunt.*, 347; 9 *Dana*, 108; 1 *Brown's Ch'y Rep.*, 92; 2 *Rev. Stat.*, 232; 4 *Bibb*, 102; 3 *Marsh.*, 23; 3 *Litt.*, 402; *Civ. Code, sec.* 786; 3 *Marsh.*, 445; 6 *B. Mon.*, 101.

SMITH & CARUTH, for appellee, cited *Hill on Trustees*, 57; 3 *Bro. C. C.*, 587; 1 *M. & K.*, 510; 4 *Russ.*, 347; 1 *Hare*, 461; 1 *Atk.*, 447; 2 *Story's Eq.*, 367; 4 *Kent's Com.*, 318.

HARLAN & HARLAN on same side.

JUDGE WILLIAMS DELIVERED THE OPINION OF THE COURT:

Mrs. Aynesworth and Mrs. Haldeman are sisters, heirs and devisees of William Metcalfe, deceased. Each heir and devisee was entitled to over eight thousand dollars from decedent's estate.

It seems to have been agreed among the children to sell the large real estate, and thereby reduce it to cash value, and to that end legal proceedings were had.

The lot and fixtures on Market street, in the city of Louisville, known as the "Brewery," was purchased in by Isabella and James F. Metcalfe, and assigned to Mrs. Aynesworth and Mrs. Haldeman, the former's interest being $7,000, the latter's $8,000.

To facilitate a sale the deed was made to W. N. Haldeman, the husband of Elizabeth. This was in the year 1860. In the following year W. N. Haldeman determined to leave Kentucky, and, through prudential considerations, conveyed this trust property to Mary Jane Kemper, the now Mrs. Aynesworth, reciting a consideration of $6,800, he having previously advanced her two hundred dollars.

Mary Jane, soon after the conveyance to her, determined to leave Kentucky, and, for prudential reasons, she conveyed the property to her sister, Isabella Metcalfe, reciting a consideration of $7,000 paid her.

She returned to Kentucky previous to November 21, 1863, on which day she and Isabella conveyed, by general warranty deed, the Brewery lot to Enghler for $15,000—five thousand dollars of which was paid, and the remainder secured by notes at twelve, twenty-four, and thirty months' time.

The notes were payable to Isabella, and the money was received by her; but afterwards, upon the promise of Mary Jane to pay over $8,000 to Mrs. Haldeman, Isabella transferred to her the notes and paid to her the money.

Mrs. Aynesworth, on divers occasions whilst she held the title, acknowledged Mrs. Haldeman's interest; did so after she conveyed it to Isabella, and subsequent to the assignment of the Enghler notes to her; and if Isabella was a competent witness, it is established that she did so in writing by letters addressed to her. She seems never to have denied her sister's interest of $8,000 in the property and its proceeds until after her marriage with George L. Aynesworth; when, having done so, and refusing to settle or pay over any part of the proceeds of the Brewery, but claiming it all as her own, Mrs. Haldeman brought this suit to compel her to execute the trust and pay over the trust fund.

Mrs. Aynesworth and her husband deny the trust; insist that her purchase from W. N. Haldeman was for a valuable consideration, and *bona fide* for her own use without regard to any interest of Mrs. Haldeman, and deny that any trust resulted to her under our statutes.

The chancellor adjudged Mrs. Haldeman had an interest in the lot and its proceeds to the amount of $8,000, and that the defendant, Enghler, should pay the remainder of the unpaid purchase price to her, and that Mrs. Aynesworth should bring the remainder of the $8,000 into court, from which Mrs. Aynesworth and husband appeal.

Isabella Metcalfe and her sister, said Mrs. Aynesworth, executed to Enghler a bond to indemnify him against any assertion of dower by Mrs. Haldeman, as she had not joined in the deed of her husband to said Mary Jane Aynesworth. It is, therefore, insisted that Isabella was interested in sustaining her title conveyed to Enghler, and an incompetent witness for Mrs. Haldeman.

Neither party was seeking to disturb Enghler's title, and had Mrs. Haldeman desired to do so, Isabella's interest would have been adverse to such claim, and, therefore, a competent witness for her. Beside, the statements of Mrs. Haldeman's petition, we apprehend will forever bar her from any claim to dower. We cannot perceive any legal interest which Isabella has in this issue, and, therefore, must regard her as a competent witness.

The evidence establishes, beyond reasonable doubt, that the lot was first conveyed to Haldeman in trust for his wife and her sister, although this trust is neither recited in the deed nor is evidenced by writing; that he conveyed it to defendant, Mary Jane, for the same purpose, reciting the interest she then had as the consideration, but with the understanding that his wife was still interested, and was to have her proper proportion of the proceeds when a sale should be made; that this understanding of Mrs. Haldeman's interest still continued, and was acknowledged in parol when she conveyed to her sister Isabella, and still so continued when Isabella and she sold to Enghler; and not only continued so in parol after the purchase notes were assigned to her, but acknowledged in writing, by her letters to Isabella, of the respective dates of January 22, 1864, and March 2d, 1864.

But it is insisted that said conveyances fall within the provisions of our statutes, and that no trust resulted.

Section 20, chapter 80, 2 Stanton's Revised Statutes, 230, provides, that "when a deed shall be made to one person, and the consideration therefor shall be paid by another, no use or trust shall result in favor of the latter."

By section 22 it is provided, that " the provisions (of section 20) shall not extend to cases wherein the *grantee shall have*

*taken a deed in his own name without the consent of the person paying the consideration;* or where the grantee, in violation of some trust, shall have purchased the land deeded with the effects of another person."

There is no question raised in this case as to the rights of creditors; but it is a simple question of rights and equities as between the parties. We think, both upon principle and authority, that a good trust is made out, whether it be regarded as of realty or personalty, and not within the prohibitions of the statute, even if regarded solely as a trust as to realty, which cannot be done under the pleadings and evidence; for, if insufficient as a trust of realty, a trust of personalty is abundantly made out, to which the statute does not apply in letter or spirit.

Mr. Story, 2d volume Equity Jurisprudence, section 969, page 278, says, whether it be true that the introduction of uses and trusts in England were attributable to the ingenuity of the clergy, to escape the prohibitions of the mortmain acts, "it is very certain that the general convenience of them in subserving the common interest of society, as well as enabling parties to escape from forfeitures in times of civil commotion, soon gave them an extensive public approbation, and secured their permanent adoption into the system of English jurisprudence."

Again, at section 972, he says:

"The Statute of Frauds, 29 Charles II, chapter 3, section 7, requires all declarations or creations of trusts or confidences of any lands, tenements, and hereditaments, to be manifested by some writing, signed by the party entitled to declare such trusts, or by his last will in writing. The statute excepts trusts arising, transferred, or extinguished by operation of law; and, from its terms, it is apparent that it does not extend to declarations of trusts of personalty; neither does it prescribe any particular form or solemnity of writing, nor that the writing should be under seal. Hence, any writing sufficiently evincive of a trust, *as a letter*, or other writing of a trustee, stating the trust, or any *language in writing clearly expressive of a trust*, intended by the party, although in the

form of a desire or a request or a recommendation, will create a trust by implication."

Therefore, if it were necessary to establish a trust which could be enforced in equity as to the realty, the letters of defendant, Mary Jane, to her sister, is such a writing as will raise such a trust, though no trust might have resulted by law from the conveyances; yet, being founded upon a valuable consideration really received, said letters are a sufficient writing to create and declare a trust from their date.

But our revision being taken from the New York statutes, the exposition of their statute by their court of last resort is authority but little inferior to the decisions of this court, and will be regarded by us with great respect in the first expounding of this statute.

In *Lounsbury vs. Purdy*, 18 *N. Y. R.* (*or* 4 *Smith*), 517, the appellate court of New York held, that although the beneficiary might consent that another should take the deed, that that is not sufficient to establish that the beneficiary consented that the deed should be absolute without any declaration of the trust, and the court said:

"But in order to adduce an implied or resulting trust out of this transaction, it is not a necessary condition that the plaintiff should have intended a valid express trust, conforming in all respects to the statute. It is enough if the conveyance, absolute in form, was so taken without her knowledge or consent. She was, doubtless, ignorant of the law of trusts, and especially of the fundamental changes made in that law by the Revised Statutes. She probably designed a conveyance to her brother, expressed, in general terms, to be for her benefit. * * * The true inquiry suggested by the statute, is, did she intend an absolute deed to Quereau? * * * It is by no means necessary that her intentions should be guided by an accurate knowledge of the law in order to save her rights. * * * If, without her knowledge or consent, it purported to vest an absolute title in Quereau, the conditions of the statute are satisfied, and the case is brought within the exceptions to the general repeal of resulting trusts."

Now it is entirely apparent that Haldeman was not to hold the title for his own use and benefit, but his holding was for the use of his wife and her sister, and not to convert their patrimony to his sole use and benefit; and, whilst it was intended to vest him with the title and power to sell, and thereby separate the joint interest of the two sisters, yet it by no means appears that it was with the knowledge or consent of either that he was to be invested with the title, *without expressing the trust,* so as to secure their interest. Indeed, the nature of the transaction, the clear purpose of all to secure their rights, raises the inference that neither would have consented that such a conveyance should be made, as the effect of such a conveyance, if so made by their consent, would have been to deprive both of their interest, which was intended by neither.

If this conveyance did not deprive Mrs. Haldeman of her interest, as we think it did not, none of the subsequent conveyances could do so, because there is not even a pretense that she knew of or consented to them.

Defendant, Mary Jane, knew all the time of her sister's interest; and the questions between these sisters are very different, and the equity much stronger, than might be the question and equity as between Mrs. Haldeman and an innocent purchaser, without any knowledge of her interest or the trust, as was Enghler.

In Day vs. Rath (18 *N. Y.*, 453), the court held that a formal, or even a written, agreement is not necessary to create a trust in money or personal estate. Any declaration, however informal, evincing the intention with clearness, will have that effect. *Such declarations stand on somewhat peculiar grounds.* They are not to be regarded as admissions merely of some antecedent in relation to the subject, *but are to be looked upon and received as constituting the very trust which they acknowledge.* A person in legal possession of money or property acknowledging a trust, *becomes from that time a trustee,* if the acknowledgment is founded on a valuable or meritorious consideration. His antecedent relation to the subject, what-

ever it may have been, no longer controls, and, therefore, is not material to the fact to be ascertained.

And Judge Story, in section 972, 2d volume Equity Jurisprudence, 281, says: "And where a trust is created for the benefit of a third person, although without his knowledge, he may afterwards affirm it, and enforce the execution in his own favor, at least, if it has not in the interim been revoked by the person who has created the trust."

Then, if no resulting trust should be allowed Mrs. Haldeman because of the conveyance to her husband, yet when the property had passed into Isabella Metcalfe, who not only acknowledged the trust, but provided expressly that her sister, the defendant, Mary Jane, should acknowledge and execute this trust when the proceeds of the property were paid over to her, surely the subsequent acknowledgment, in writing, by Mary Jane to her, that such had been provided for, and that she intended in good faith to execute it, and did attempt to execute it, by the attempt to purchase the Pewee Valley house and land for Mrs. Haldeman, is all sufficient to establish her trust character, and draw with it all the incidents and equities of her trusteeship.  But if there had been no writing, the parol evidence of her parol acknowledgment would have been ample to establish her fiducial character and Mrs. Haldeman's interest in personalty, which the property became after the sale of the brewery lot to Enghler.

The Revised Statutes have repealed the long-established rules of equity as to resulting trusts in real estate, and not as to personal property; therefore, these long-recognized rules prevail in all their force as to personalty.  After the sale to Enghler, the proceeds were money and choses in action.  The acknowledgment of the defendant, Mary Jane, when she received the notes from Isabella Metcalfe; and her numerous subsequent acknowledgments of Mrs. Haldeman's interest, are all sufficient to establish the trust as to this personalty.

The chancellor very properly adjudged to Mrs. Haldeman the remainder of the unpaid purchase price due by Enghler; also very properly directed the defendant, Mrs. Aynesworth, to bring into court the remainder of the eight thousand dol-

lars due Mrs. Haldeman, and should enforce this decree by proper orders.

The chancellor, however, should, by his judgment, ascertain precisely this balance, after deducting the expense of the attachment as provided in his decree; and should also, by proper orders, direct the investment of all this fund for Mrs. Haldeman's benefit, free from the control of her husband, or should put the fund under the control of a trustee for that purpose.

Wherefore, the judgment is affirmed, and the court below directed to enter judgment for ten per cent. damages on the amount of the judgment superseded.