JUDGE COFEBi
delivered the opinion oe the court.
In 1858 Snead and wife conveyed a lot of ground in Dan-ville to James Garrett, John C. McKay, Leroy Green, David Langford, and Robert Gray in consideration of the sum. of three hundred and twenty-five dollars, to be by them held “in trust for the use and benefit of the colored members of the Methodist Episcopal Church South, according to the rules and discipline which from time to time may be agreed upon and adopted by the ministers and preachers of the said church at their general conference, and in further trust and confidence that they shall at all times forever hereafter permit such ministers and preachers belonging to said church, as shall from time to time be duly authorized by the general conference of the ministers and preachers of the said Methodist Episcopal Church South, or by the annual conference authorized by the said general conference, to preach and expound God’s holy word therein.”
At the time the deed was made there was a church edifice on the lot which' seems to have been built mainly by contributions made by the colored people, most of whom were then *320 slaves and members of the same local church organization with the white people in Danville, belonging to the Methodist Episcopal Church South. From the time of the erection of the church in 1849 or 1850 the colored members seem to have worshiped exclusively in this church, though they continued to be members of the same organization with the whites. In 1865, the Ohio Conference of the African Methodist Episcopal Church having extended its jurisdiction over that part of Kentucky in which Danville is situated, the colored members of the Methodist Episcopal Church South at Danville, by unanimous vote, attached themselves to the African M. E. Church, and continued their connection with it by representation in its annual and general conferences, and by receiving ministers sent to them by those conferences until an annual conference of that church was established in Kentucky, and since that time have been in connection with it. This action of the colored members, though not formally approved by the local society of the Church South, of which they had formerly been members, seems to have been tacitly recognized by the cessation of any supervision over them and by omitting them from the returns of its membership.
Thus matters stood until two of the members were expelled' from the church for breaches of discipline and another was under charges, when, at their instance, the quarterly conference of the Methodist Episcopal Church South for the district in which Danville is situated appointed seven persons as trustees “of the Colored Methodist Episcopal Church South, in Danville;” viz., J. W. Proctor, Reuben Gentry, J. G. Williams, and John Metcalfe, white; and David Langford, James Roots, and John Sutherland, colored.
On the 3d day of May, 1872, these persons, styling themselves “ Trustees of the Methodist Episcopal Church South for Colored Members,” brought this suit in equity against Alfred Newman and others, alleging that they were the trustees for *321 the Methodist Episcopal Church South “for colored members” living in and about Danville; that they had been regularly appointed by the constituted authorities of the M. E. Church South, and that as such they owned and held the legal title to the church property mentioned “for the use and enjoyment of those colored members of the Methodist Episcopal Church South who worship there from time to time;” that they were the successors in office of the trustees to whom the lot was conveyed, and that the defendants, Newman and others, had taken possession of said church edifice without authority or the consent of the plaintiffs, and were occupying and using it without right; that they were not members of the Methodist Episcopal Church South, but belonged to a different church — to-wit, the African Methodist Episcopal Church— and were endeavoring to procure the title to be conveyed to that church, and to defeat the title of those to whom it of right belonged; that the defendant Newman was a minister of the African Methodist Episcopal Church, and was the stated preacher of a congregation belonging to that church; and that he and his associates were controlling the church and excluding those persons for whose use it was held, and refused to surrender the same or to permit the ministers and members belonging to the Methodist Episcopal Church South to preach in or occupy the same. They prayed for an injunction to restrain the defendants from using or occupying the church; and that on final hearing they and all others, except the beneficiaries under the deed, might be forever enjoined from using or occupying said property, and that they be decreed to surrender the same to the plaintiffs, and for all proper relief.
The defendants denied, among other things, that the plaintiffs were “ trustees of the Methodist Episcopal Church South, for Colored Members,” or that there existed any such church as that for whose members they styled themselves trustees. They also denied that the plaintiffs had been appointed trustees *322 by the constituted authorities of the Methodist Episcopal-Church South. They admit the execution of the deed by Snead and wife for the uses therein declared, but say the beneficiaries were the colored members of said church, and that the deed was so made because the .greater portion of the beneficiaries were then slaves, and incapable, either as individuals or as an organized body or church, of holding the title; and the Methodist Episcopal Church South being then the only organized body of Methodists in Danville, the conveyance was made to that church, to hold for the sole and exclusive use of its colored members; that after the emancipation of slaves the colored members unanimously severed their connection with the white people with their consent, and organized and attached themselves to the African Methodist Church without objection on the part of the white people or of the authorities of the Methodist Episcopal Church South, and had ever since held and used the church edifice in contest without objection or molestation from any source whatever until charges were preferred against the three colored persons who are plaintiffs, and two of them, Langford and Sutherland, were expelled from the church. They denied that either of the three colored plaintiffs was a member of the Methodist Church South, or of any Methodist Church, and alleged that Roots was still a member of the African Methodist Church. They also denied that there was any organized society or body of colored persons at Danville holding connection with the Methodist Episcopal Church South. These allegations are sustained by the evidence in the record, and, without stating other defenses set up and relied upon, we think they are sufficient to defeat the action.
The conveyance was for the use of the colored members of the Methodist Episcopal Church South, and for no one else. They were a distinct class, and no one has now a right to enjoy that trust except persons answering the description in the *323 deed — i. e., colored members of the Methodist Episcopal Church South — and there being no such persons either members of the Danville church of white people or in a separate organization in connection with the Church South, it does not appear that there is any one now entitled to have the trust enforced. Th.e church at Danville, composed wholly of white people, neither' has or claims any right to the property in contest; the plaintiffs were appointed trustees by the quarterly conference of which that church is a constituent, and if the right of that body to appoint trustees not members of the Church South, against the express provision to the contrary contained in the' Book of Discipline, p. 241, be conceded, still the plaintiffs show no right to recover the property, because they not only fail to show that there are any beneficiaries entitled to enjoy the trust, but, on the contrary, it is shown that there are now no such persons.
But we are of opinion that having allowed the colored members to withdraw without objection, and having ratified that withdrawal by ceasing to treat them any longer as members of their church, and having no longer any members answering the description in the deed, the church at Danville and the quarterly and other conferences of which it is a constituent have, for the time being at least, lost all right over the property. No control is given by the deed or any church regulation of which we have any knowledge, certainly not by any in this record, to any particular local organization of the Methodist Episcopal Church South over this property, and we see no reason why the church at Danville should have any more control over it than any other church in the same connection; certainly its mere local proximity can not confer such right of control.
There is no general organization of colored persons now in connection with the Methodist Episcopal Church South. All such connection has been severed in obedience to the *324 wishes of both white and colored people, and to decree the property in contest in this case to the plaintiffs would not only be to encourage the refractory and evil-disposed among them, but to stir up a strife and bitterness between white and colored people incompatible with the welfare of both, and inimical to the interests of true religion. The defendants and their associates are the persons for whose benefit the trust was created; they were led to their present connection by some of the persons who now seek to turn them out of the church property because of that connection, and to allow them to do so when it is shown that there are no persons answering the description of' beneficiaries under the deed would be to aid them to do a wrong through the forms of legal proceedings. It does not appear that any colored persons connected with the M. E. Church South, whether residing in Danville or not, have ever desired to hold religious services in the house.
If the defendants are kept out, they not only lose property they have paid for, and which in equity and good conscience belongs to them, but the object of the trust is defeated for the want of beneficiaries capable of taking and enjoying its benefits.
The right of the plaintiffs to the property can not be maintained, upon the ground that the defendants do not belong to the Methodist Episcopal Church South; the same reason would defeat the plaintiffs, for they neither come within the description of beneficiaries named in the deed nor represent any one as beneficiary who does. The plaintiffs either represent the white portion of the church or they represent no one, for there is no society of colored members or colored members in the Church South at Danville; and they are necessarily the representatives of white people who are not beneficiaries and do not claim the property, or they are without constituents. The right to the church edifice can only be asserted through and for the benefit of a local society, or for the benefit of *325 colored members belonging to a local society, in connection with the Methodist Episcopal Church South.
It is to such society and its members alone that the first clause of the deed secures any proprietary right or any tangible interest in the property which can be the subject of adjudication by the civil tribunals. The members of the Methodist Episcopal Church South at large, whether white or colored, not belonging to a local society, can have no use of the local premises but through the instrumentality of a local society, and by means of the subordination of the local use to the laws and authority of the church at large. (Gibson v. Armstrong, 7 B. Mon. 490.)
The use is declared to be for the colored members of the Methodist Episcopal Church South; this right does not belong to every colored member of the church at large, but is limited, so far as it can be enforced by the civil courts, to such as are members of a local society connected with the general organization, in accordance with the regulations of the church. The plaintiffs are neither members of any local society connected with the church nor do they represent colored members who are, and they have therefore failed to manifest a right to the relief sought.
Wherefore the judgment perpetually enjoining the appellants from occupying and using the church property in the petition mentioned is reversed, and the cause is remanded with directions to dismiss the petition.