WILLIAM A. MERRIWEATHER, ET AL., *v.* CHARLES H. PETIT, ET AL.

**Conveyance to Church—Creation of Trust.**

No particular form of words is necessary to create a trust, nor need it be created by deed. It will be sufficient that the intention to create a trust be clearly established and the object of the trust distinctly manifested; and its existence may be shown by any writing signed by the person sought to be charged as a trustee, if it clearly expresses the trust and sufficiently connects the trustee with the subject-matter of the trust.

**Beneficiaries of a Trust.**

Where a trust is created in favor of the Protestant Episcopal church and its trustees receive conveyance of real estate, a congregation not professing or practicing the doctrine, discipline or worship according to the order of that church, cannot assert a beneficiary interest in the property.

APPEAL FROM LOUISVILLE CHANCERY COURT.

November 9, 1878.

OPINION BY JUDGE COFER:

The deed to the lot in contest is to "Charles H. Petit, William McCready, and W. A. Merriwether, trustees of Emanuel Episcopal Church of the diocese of Kentucky, in the city of Louisville," but it contains no other words indicating a trust or the uses for which the conveyance was made. Whether the language employed in the deed would of itself create an enforcible trust we need not decide, because, in our opinion, the writing addressed by Petit, McCready, and Merriwether, to the assistant bishop of the diocese of Kentucky on the 16th of December, 1871, when considered in connection with the canon of the church, removes any doubt or uncertainty that might otherwise have existed.

That writing reads as follows: "We, the trustees and church wardens, and vestrymen of Emanuel church in the city of Louisville, Jefferson county, Kentucky, being in the good providence of God, in the possession of a house of worship erected to God, the Father, and for the Son and Holy Ghost, and for the celebration of divine

8

worship, according to the order of the Protestant Episcopal Church in the United States of America, in its doctrine, liturgy, rites, ministry, and usages, do hereby request the Right Reverent George D. Cummins, D. D. Assistant Bishop of the diocese of Kentucky, to take the said house under his spiritual jurisdiction, and that of his successors in office, and to consecrate it to the worship of Almighty God, the Father, the Son, and the Holy Ghost, by the name and title of Emanuel church, and thus to separate it henceforth from all unhallowed, ordinary and common uses; to dedicate it to the service of God for reading and preaching His Holy Word, for celebrating His Holy Sacraments, for offering to His glorious Majesty the sacrifice of prayer and thanksgiving, for blessing His people in His name, and for the performance of all other holy offices according to the order of the Protestant Episcopal Church in the United States of America.

In testimony whereof, we have hereunto set our hands and seals, this 16th day of December of the year of our Lord, one thousand eight hundred and seventy-one.

(Signed) W. A. MERRIWEATHER.<br>WILLIAM McCREADY.<br>CHARLES H. PETIT."

This order was made in order to conform to a canon of the church which reads as follows: "No church or chapel shall be consecrated until the bishop shall have been sufficiently certified that the building and ground on which it is erected have been fully paid for, and are free from lien or other encumbrance; and, also, that such building and ground are secured, by the terms of the devise or deed, or suscription by which they are given, from the danger of alienation from those who profess and practice the doctrine, discipline and worship of the Protestant Episcopal Church in the United States of America," etc.

No particular form of words is necessary to create a trust, nor need it be created by deed. It will be sufficient that the intention to create a trust be clearly established, and the object of the trust distinctly manifested. The existence of a trust may be established by any writing signed by the person sought to be charged as a trustee, however untechnical or informal, if it clearly expresses the trust and sufficiently connects the trustee with the subject-matter of the trust. 4 Kent, 468; *Aynesworth v. Haldeman,* 2 Duv. 565.

The deed from Lyon shows with reasonable certainty the intention to create a trust, and when considered in connection with the

request addressed to the bishop, and the canon we have quoted, every requisite of a valid trust is established.

Nor do we perceive any tenable ground upon which we can base the conclusion that the trust was intended for the benefit of the particular congregation worshiping at that place, irrespective of its ecclesiastical connection, so as to warrant the judicial decision that a majority of the congregation had a legal right to take the property with it into another church. That one of that majority paid for the lot with his own means may give him and his associates a strong claim to it as the repayment of the price paid by him, but cannot constitute a controlling element in the decision of this case in the secular courts. He made his donation to a local society in union with the Protestant Episcopal Church in the United States, and by the request addressed to the bishop to consecrate the house declared that it had been "erected for the celebration of divine worship according to the order of the Protestant Episcopal Church in the United States of America in its doctrine, liturgy, rights, ministry and usages," and requested that it be so dedicated, thereby declaring the beneficiaries to be the members of a local society of Christians worshiping at that place according to the order of the Protestant Episcopal Church in its doctrine, liturgy, rites, ministry and usages.

It is true the lot is not mentioned in the request, but the canon provides that no church shall be consecrated until the bishop is sufficiently certified that the ground on which it is erected has not only been paid for and freed from all liens and encumbrances, but secured from the danger of alienation from those who profess and practice the doctrine, discipline and worship of the Protestant Episcopal Church. This canon must have been known to the trustees when they signed the request, and they must have intended to be understood as tendering a house which, according to the law of the church, could be consecrated.

The appellants and those they represent are not members of a congregation in union with the Protestant Episcopal Church, nor do they profess or practice the doctrine, discipline or worship according to the order of that church. The Reformed Protestant Episcopal Church with which they are in connection is a distinct and separate organization, not only in fact and in name, but in doctrine and policy.

Nor do we think the appellants can succeed on the ground that

there are no beneficiaries answering the description contained in the writings evidencing the trust. They do not claim that all the members of the congregation united with them in attaching themselves to the Reformed church; and the evidence shows that those of its members who did not do so have organized and have demanded to be put in possession, and we will not consider, what would otherwise be a question, whether the appellees, McCready and Petit, holding the title as trustees, might not control the property and prevent its use by persons not beneficiaries of the trust. We decided in *Newman v. Proctor,* 10 Bush 318, that there being no person or society answering the description of beneficiaries the action could not be maintained, but those who sued in that case had no title in themselves, and were charged with no duty in respect to the property, and were therefore under the necessity to show that they represented persons who had a right to enforce the trust. Not so here. McCready and Petit hold the property jointly with Merriweather, and are charged with duties respecting the property, and an unquestionable right to maintain the suit to preserve the trust.

Because the title is in part vested in them, it is wholly immaterial whether they used to be or ever were members of the congregation or were selected by it as trustees or not. The majority of the congregation having united with the Reformed church divested themselves of all interest in the property. This is not a case for the application of the statute respecting a division or schism in a church. Schism is a breach of unity between persons of the same religious faith without any disturbance of the relation of either party with the denomination of Christians with which the whole society was previously connected. *McKinney v. Griggs,* 5 Bus 401.

No objection was taken in the court below on account of defect of parties, and any that might have been argued was waived. We cannot enter into the question whether it is a hardship that the appellants should lose property paid for by one of their number. Whatever he invested he unconditionally donated to the use of a congregation worshiping according to the order of the Protestant Episcopal Church in the United States, and this court has no alternative, but must adjudge the rights of the parties according to the law of the land.

Since the foregoing was written the case has been fully and ably reargued. After listening to the last argument we thought that, as the deed did not prescribe the use for which the property was to be

held, and as the congregation was not at the date of the deed in union with any ecclesiasticism, and its right to the use did not originally depend on such union, its rights could not be affected by the acts of the trustees in tendering and causing the property to be consecrated to the use of a congregation worshiping according to the order of the Protestant Episcopal Church. But upon further reflection we have become satisfied that the record discloses facts which show that whatever may have been the rights of the congregation they must be held to have assented to what the trustees did, and to be bound by such assent.

The consecration of the church was a solemn public act, and may be safely presumed to have been performed in the presence of a large part of the congregation, and to have been known to all. That rite was performed in December, 1871, without objection, as far as appears from any source, made at the time or afterwards, and the congregation, with knowledge of the consecration and the law and usage of the church and the acts of the officers of the congregation under which it was performed, continued without objection until July, 1874, to be represented in the convention of the diocese and in its connection with the church at large. We think we would do violence to these facts to hold that although the acts of the trustees in tendering and causing the property to be dedicated was a declaration of the uses for which it was conveyed sufficient to bind them, they did not bind the congregation because the trustees had no power to make such a declaration. On the contrary, the facts and circumstances leave no room to doubt that what the trustees did was at the time understood and approved by the congregation, and having been so long passively, at least, recognized as correct, it should be held to have been done with the approval of the entire congregation; and so whatever the original design may have been, all must be regarded as concurring in the acts of the trustees procuring the consecration which forever dedicated the property to the use of the congregation worshiping according to the order of the Protestant Episcopal Church of the United States.

The judgment must therefore be *affirmed*.

*Humphrey & Marshall, F. M. Huffaker, for appellants.*

*Simerall & Bodley, for appellees.*