## DAY *v.* ROTH and another.

In order to constitute a trust in respect to money or personal estate, no formal or written agreement is necessary. Any declaration or admission by the person in possession of the fund will have that effect, if founded on a consideration, and if the intention be evinced with sufficient clearness.

And such declarations or admissions are evidence of the trust, not only against the party who made them, but also for the purpose of charging lands afterwards purchased by another person, and wholly or partly paid for out of the trust fund.

V. W. R., having in his hands £1,500, lately received from the plaintiff in England, wrote to her a letter containing an admission that he held the money for investment on her account, and asking her to send him a power of attorney to act in respect to the fund, which was sent to him accordingly. It did not otherwise appear upon what understanding he had received the money. Afterwards, the £1,500 was invested in the purchase and improvement of certain real estate, the conveyance of which was taken to his brother N. R. : *Held,* that the letter was proper evidence against both the brothers for the purpose of establishing the fact that V. W. R. held the money in trust, and not as a mere debtor to the plaintiff.

Although the plaintiff, it seems, understood that her money was to be invested in the real estate and assented thereto, yet not having consented that an absolute deed be taken to another person without any recognition of her interest : *Held,* that the transaction was in fraud of her rights, and that the estate was chargeable with an equitable lien in her favor in the nature of a resulting trust.

A general objection to a series of letters offered in evidence is properly overruled, if any one of the series is evidence for any purpose ; and on a review of the trial it cannot be objected that the judge should have limited the effect of such letters as evidence to the particular purpose for which they or any one of them was properly admissible.

A person whose lands are charged with an equitable lien undertakes to deliver his own notes for a part of the sum, and to procure and deliver the bond of another person for the residue. The creditor agrees to accept these obligations in settlement of the claim, but on the same being tendered refuses to receive them. Such an accord is not a satisfaction of the lien.

APPEAL from the Supreme Court. Action to charge certain real estate known as the Utica Museum, the title of which was in the defendant, Nelson Roth, with a specific lien in favor of the plaintiff for £1,500, with interest. The

trial was before Mr. Justice PRATT, without a jury, who found the following facts: In 1850 the plaintiff, an unmarried lady, residing in England, while under promise of marriage to the defendant, Volkert W. Roth, who was then in London, intrusted to him the sum of £1,500 to be invested by him as agent of the plaintiff and for her benefit in this country. In September of that year, Volkert returned to this State, bringing the moneys of the plaintiff so entrusted to him. Shorly after his return, Volkert procured the purchase of the property known as the Utica Museum, and procured the conveyance thereof to be made to Nelson Roth, who has ever since held the legal title, and subsequent to such purchase Volkert, with the knowledge and consent of Nelson, and with the knowledge on the part of the latter of the purposes for which said moneys were entrusted to Volkert, used the said moneys of the plaintiff in paying for the property, and in fitting the same up for a Museum and Theatre. After the moneys were so used and invested, the defendants conspired together to defraud the plaintiff, by falsely representing to her, by letter, that the Museum had been sold for the debts of Volkert, and her interest therein invested in State stocks, and subsequently that her money had been used by Volkert for his own purposes; all of which was false, the money never having been withdrawn from the Museum property or paid back by Nelson to Volkert. Sundry payments had been made by the defendants at different times, as interest or profits on the moneys of the plaintiff, leaving due her $8,435.25, which the judge declared a specific lien upon the property, and ordered judgment for a sale of the property, as upon foreclosure, in default of payment within thirty days.

Some exceptions were taken at the trial, on the part of Nelson Roth, to the admission of evidence, which are sufficiently stated in the following opinion. It was proved that in January, 1855, the plaintiff came to Utica and had a negotiation with Nelson Roth in reference to her claim.

Nelson, disclaiming any obligation on his part, proposed to pay her the interest in arrear by giving his own notes, payable within two months, and also to execute his own note for $2,000 of the principal; the remainder of the principal to be secured by the bond of Volkert, who was then a resident of Wisconsin. The plaintiff agreed to these terms and promised to execute a release which had been drawn up and submitted to her, upon receiving the notes and the bond of Volkert, which, at her request, was forwarded to Wisconsin for him to execute. This agreement was made at the house of Nelson Roth, he representing to her that he had no doubt the plaintiff would get her pay upon the bond of Volkert, and that, in case of her refusal to accept his terms, the litigation of her claim, if successful on her part, would involve a delay of four years. Volkert was then selling jewelry on commission for Nelson, and was reported to be insolvent. He executed and returned the bond, which was tendered to the plaintiff, together with Nelson's notes, according to the agreement, the money for one of them, which had become due in the meantime, having been deposited at the bank where it was payable. The plaintiff declined to receive them or execute the release of Nelson, and immediately thereafter brought this action. The judge decided that the arrangement did not constitute any equitable defence; being of such a nature and made under such circumstances that it would not be enforced in equity. The judgment having been affirmed at a general term in the fifth district, the defendant, Nelson Roth, appealed to this court.

*Timothy Jenkins,* for the appellant.

*Francis Kernan,* for the respondent.

COMSTOCK, J. The action was brought to charge the sum of £1,500, received from the plaintiff by the defendant V. W. Roth as an equitable lien upon the real estate

known as the Utica Museum, owned by Nelson Roth. It being admitted that V. W. Roth had the plaintiff's money to the amount claimed by her, the case at the trial depended mainly on two questions of fact: 1. Whether he held the money upon a trust for investment on the plaintiff's account; and 2. Whether he invested it in the purchase and improvement of the Museum, the purchase being made in the name of Nelson Roth, who received the conveyance from the previous owner. These questions of fact, as well as others less essential to the relief demanded, were determined in the plaintiff's favor by the judge who tried the cause. We are asked to review his conclusions on the ground chiefly that they were based wholly or partially upon evidence erroneously admitted. One portion of the evidence received generally in the cause and against both defendants, consisted of a series of letters written by V. W. Roth to the plaintiff in England, where she resided and where he had received the £1,500 in question. In relation to those letters the point taken on the trial was, that they were inadmissible to affect the rights of Nelson Roth, upon whose estate it was sought to charge the money. The objection was stated in general terms, and it was taken indiscriminately to all the letters. If therefore they were admissible, or if any one of them was admissible for any purpose affecting Nelson Roth, there was no error in overruling the objection.

And I am of opinion that at least one of these letters, and the most important one, was properly received against both defendants for the purpose of establishing the first of the main propositions on which the case depended, to wit, that V. W. Roth held the money in question as the plaintiff's agent or trustee for investment. It appears that he returned from Europe about the 1st of September, 1850, having the £1,500. The first of his letters to the plaintiff introduced in evidence was written September 25th, 1850. In that letter he inclosed a power of attorney for her to sign, authorizing him to transact her business generally in the United

States, and especially to draw for and receive this very money, which it seems he had deposited in the Kirkland Bank, Clinton, Oneida county. In the same letter he requested her to sign the power and return it to him by mail, informing her that the money was deposited at five per cent interest. He then adds: "When you sign the inclosed paper and return it to me, I shall invest your money. My intention is to make up the sum of £3,000, and purchase a building known as the Utica Museum, which gives a good income of £300 a year, and in ten years the property will be worth double what it is now. All this will be settled upon you." The power of attorney was signed and returned according to the request.

This letter was plainly admissible for the purpose of establishing the fiduciary relation of V. W. Roth to the fund in controversy. If it had been proved that at the time he received the money from the plaintiff, he agreed to invest it for her use, this, it is conceded, would establish the trust not only against himself but all other parties. It is equally clear, and is not denied, that a subsequent agreement recognizing the fund as already in his hands, and stipulating for its investment on the plaintiff's account, would have the same effect. Such an agreement, whether original or subsequent, would be, it is true, in a certain sense, *res inter alios acta* as to Nelson Roth; but it would impress the fund itself with the characteristics of a trust, and the impression would go with it into his hands or into his estate. The plaintiff would have a right to follow and claim it so long as she could trace its identity into whatsoever hands it might be transferred, and to charge it upon any man's estate in which she might find it invested, unless the owner of the estate could claim that after such investment he purchased the estate in good faith and acquired the legal title. Such is not the situation of Nelson Roth, because if he is chargeable at all, it is on the ground that the plaintiff's money went into the very purchase of the Museum, made

in his name, and into its subsequent improvement. Any agreement creating the trust would necessarily affect him, and would be part of the evidence to charge his estate.

But a formal or even a written agreement is not necessary to create a trust in money or personal estate. Any declaration, however informal, evincing the intention with sufficient clearness will have that effect. Such declarations stand on somewhat peculiar grounds. They are not to be regarded as admissions merely of some antecedent fact in relation to the subject, but are to be looked upon and received as constituting the very trust which they acknowledge. The doctrine of equity is, that by their own force they impress the fund with a peculiar character, and hence they are receivable on the same grounds as a precise and formal agreement. A person in the legal possession of money or property, acknowledging a trust, becomes from that time a trustee, if the acknowledgment is founded on a valuable or meritorious consideration. His antecedent relation to the subject, whatever it may have been, no longer controls, and therefore it is not the material fact to be ascertained. (2 *Story's Eq.*, § 972; 18 *Vesey*, 140; 1 *Hare*, 469; 1 *Keen*, 553; 1 *Wend.*, 625; 2 *Spence's Eq. Jur.*, 53.)

It may be conceded, therefore, that the case does not show for what purpose, or under what agreement, V. W. Roth received the £1,500, and brought it to this country. It is admitted that he was in some way and in some character accountable to her for the money. His letter which has been referred to, together with the power of attorney which he procured the plaintiff to sign, and which he accepted from her, are sufficient of themselves to constitute the alleged trust. If he was a mere debtor before, he continued so no longer. By his own declaration and act, and by the concurring act of the plaintiff, he became from thenceforth her agent and trustee, and was responsible in that character only. His letter acknowledged the money

to be hers, and declared an intention to invest it in a particular manner.   Regarding it as a mere admission or acknowledgment, it was admissible within the principles which have been stated.   But it was more.   It contained a request that the plaintiff should appoint him to be her agent for investment; and she, accepting the declaration and granting the request, gave him a written power to take the charge of the fund.   He accepted the power and, so far as we know, acted upon it.   At this point of time, if not before, the trust was *constituted ; and the evidence of its existence is in the very acts and declarations which created it.   If, therefore, she had a right to prove the trust, which is not denied, she had a right to prove those acts and declarations.*

The reasons which have been given for admitting the letter of September 25, 1850, may not include those subsequently written.   The Museum was purchased in the name of Nelson Roth, early in October, and was conveyed to him. The plaintiff's money, as she alleges, was invested in that purchase, and very soon afterwards in the improvement of *the property.   But the fact of such investment could not be* proved against N. Roth, who became the legal owner, by any communication between his brother and the plaintiff. The letter of September twenty-fifth, and the accompanying acts, as we have seen, were evidence to show the creation of the trust, but it required other evidence to trace the fund into the estate of Nelson Roth, and to charge him with it. The subsequent letters of V. W. Roth were not competent to establish that part of the case.   Nor were they competent, so far as I can see, to establish the character in which the writer had received or held the money, because at the time they were written he had, as the plaintiff insists, parted with the possession of the fund.   If the purchase and improvement of the Museum, in his brother's name, were really for his own benefit, even that fact could not be proved by his own assertions.   Whether all the letters exhibited on the trial were not receivable on the ground of

a conspiracy between the two Roths, or on some other ground discussed on the argument, but not here considered, need not be examined. The one of September twenty-fifth was properly received for a purpose which lay at the very foundation of the plaintiff's case. But the objection was taken to all the letters without distinction, nor was the judge asked to limit the purposes for which any one of them might be received. No complaint can, therefore, now be made that they were all received, and without a particular specification of their effect as proof in the cause.

It having been found at the trial, without error in admitting the evidence, that the plaintiff's money, held by her trustee, was invested in the Museum, as already stated, her right to the relief demanded scarcely admits of a question. It has not been pretended that V. W. Roth, the trustee, loaned the money to Nelson Roth. If that had been the case, the latter would have become a general debtor to the plaintiff, but the equitable lien which she now asserts would have no existence. She must be deemed, I think, upon the facts, to have assented to an investment of her funds in the purchase of the Museum; but it is not pretended that on that purchase she consented that an absolute conveyance should be made to Nelson Roth, without any recognition of her rights in the transaction. A person intentionally investing money in the purchase of land in the name of another, to whom an absolute conveyance is made, can now claim no resulting trust. (1 *R. S.*, 728, §§ 51, 53.) But we must assume that the plaintiff expected her agent would honestly make the investment, and in a form which would preserve at least some trace of her own rights. This expectation was certainly none the less reasonable, when we consider that the agent was also her accepted lover. In the mildest phrase, it was a gross abuse of the trust thus to deal with the money confidingly placed in his hands; and in the most lenient view of the conduct of the other brother, he stands in no relation to the controversy which enables him to profit

by that abuse. According to the just and well established rule of equity, the plaintiff lost no rights by the transaction, and she may enforce her claim as an equitable lien in the nature of a resulting trust.

It appears that in January, 1855, the plaintiff came from England to Utica for the purpose of recovering her money or procuring information respecting it. She found there Nelson Roth, with whom she made an executory arrangement for the adjustment of her claim. She was to accept his notes for about one-third of the amount, and the bond of V. W. Roth for the residue; and on the notes and bond being executed and delivered to her, she agreed to release Nelson Roth. The notes and bond were soon afterwards executed and offered for her acceptance, but on being advised she declined them, and refused to consummate the agreement. The attending circumstances need not be stated. They were not such as would justify a court of equity in decreeing a specific enforcement of the contract. It has been claimed, however, that the facts stated constitute a legal bar to the plaintiff's demand in the form she now prosecutes it. This proposition is opposed alike to reason and authority, and we cannot sanction it by our decision. That a simple, unexecuted accord, resting in the mere promise to pay in the obligations of the party who is the debtor, or whose estate is chargeable with the debt, is not a satisfaction, is too clear in principle, and too well settled by the cases to admit of a doubt.

Some other questions were discussed on the argument; but they involve an examination of the evidence on which conclusions of fact found at the trial were based, and they present no question of law. We see no reason to doubt the accuracy of those conclusions, but it is not our province to review them. In one of the points it was insisted that the uncontradicted evidence on the part of Nelson Roth proved that he had repaid to V. W. Roth all the moneys of the plaintiff, which had been invested in the purchase and

improvement of the Museum. That evidence consisted wholly of some carefully prepared receipts, dated in 1853, in which V. W. Roth acknowledged the alleged payment. The justice who tried the cause discredited those receipts, for the reasons which he has assigned, and which are satisfactory to us. But his conclusion is not reviewable in this court. Even if we believed the evidence entirely credible, as well as uncontradicted, we could not entertain the question against a finding directly on the point.

The judgment should be affirmed, and in the special circumstances of the case we are also of opinion that the plaintiff is entitled to five per cent on the sum she has recovered, as damages for delay caused by the appeal.

The judgment of this court will be entered accordingly.

All the judges concurring,

Judgment affirmed.