JOHN C. BOHLE et al.

v.

DIEDRICH HASSELBROCK et al.

[Filed April 10th, 1901.]

1. On an issue whether funds used by a life tenant and executrix in the purchase of land on January 1st, 1868, were in part funds of the estate, so as to create a charge on the land in favor of the remaindermen, it appeared that her deceased husband left several thousand dollars in various savings banks, and that on January 3d, 1866, she drew from a bank $2,080; on January 6th, from a trust account, $518.75; and from an individual account a like sum; that on the 10th she deposited $2,000 in favor of her children, and in another bank $650 for herself; on January 15th she drew from a still different bank $1,600, and about the same time put on record a mortgage for $2,870. On July 18th, 1867, she drew from her decedent's account $530.45, and a like sum from an individual account, and the same day deposited $1,310 in her individual account. The will authorized the executrix to use the principal of the estate to support the children. Her accounts as executrix were not shown, nor was there any evidence as to her private means.—*Held*, that the evidence was insufficient to show an appropriation of trust funds by the executrix.

2. Where an executrix and life tenant uses both her own money and trust money in the purchase of land, the remaindermen do not have an equitable estate proportionate to the amount of the trust funds used, but merely a charge on the land, bearing interest from the life tenant's death.

*Mr. Charles W. Parker,* for the complainants.

*Mr. J. W. Rufus Besson,* for the defendants.

STEVENS, V. C.

Anton L. Bohle died in March, 1863. He left him surviving a widow, Anna, and four children, John, Anna, Anton and Sophie. Sophie married August Schroeder, and, in April, 1888, died without leaving issue. Anton L. Bohle left a will, by which he appointed his wife executrix and guardian of his children. By its third paragraph he gave (in substance) the interest and

income of his estate to his wife for life, with remainder to his four children. He provided that if the income should not be sufficient to support and educate his children, his wife might use so much of the principal as was necessary for that purpose.

In August, 1864, the widow married Diedrich Hasselbrock, and had issue by him. She died in 1898. On January 1st, 1868, she purchased two lots of land in Hoboken. The complainants' claim is that she purchased them with moneys belonging to the estate of her first husband, and that they are, therefore, bound by a resulting trust, or, at least, affected with a charge in their favor. By the second paragraph of her will she gave these lots to her three surviving children by her first husband, and so they take the fee in any event. If, however, the land is to be regarded as affected with a trust, Diedrick Hasselbrock, the second husband, has no curtesy; if it is not, then he has. If the land is affected with a charge, then the curtesy is subject to the charge. The children are in possession, and he has instituted an ejectment to recover an estate by the curtesy. The present bill is filed to restrain this legal proceeding.

It appears that at the time of his death, in 1863, Anton L. Bohle had accounts in New York savings banks, amounting, according to the calculation of complainants' counsel, to $7,789.73. What other estate he had, except a small grocery business, does not appear. The evidence shows, and it is admitted by defendants' counsel, that on January 2d, 1868, the executrix drew from different savings banks various sums, deposited some in her own name, some in her late husband's and some in her children's, amounting, in the aggregate, to $10,430.35. Of this amount it is agreed that $6,423 were trust funds. The controversy is over the difference. It is conceded by complainants' counsel, however, that there is no proof of the account ($1,497) in the Mechanics and Traders Bank, it having failed and its books having been destroyed, and it is only claimed that of the balance ($2,510.35) $1,289.45 can be traced into the trust funds. The dispute is, therefore, narrowed down to these last-mentioned figures. I think the evidence fails to indicate with sufficient certainty that any of this sum of $1,289.45 was trust money. The proof is only this: It appears from the

itemized accounts that, on January 3d, 1866, the executrix drew from the Seaman's bank, $2,080; from a trust account, $518.75; and, on January 6th, from the Bowery bank, from an individual account, $518.75; total, $3,117.50.

On January 10th she made deposits in the East River bank, for her children, to the amount of $2,000, and in the Metropolitan bank, for herself, $650. There is not the slightest evidence, other than that afforded by the above figures and dates, that the deposit of $650 made in the Metropolitan bank was part of the $3,117.50 thus drawn out. The court is asked to make the inference that it was, from the short interval which elapsed between the making of the drafts and the making of the deposits. But it appears that one of the drafts ($518.75) was upon an account that stood in the name of Anna herself, and it further appears that, on January 15th of the same year, she drew from the Emigrant bank $1,660, and about the same time (as counsel for complainants states in his brief) put on record a mortgage for $2,870.

In such a state of the proofs it is impossible to make the inference contended for. Her executrix's account, if she ever rendered one, is not in evidence. We do not know what the debts of the estate were, what her private means were, or whether she found it necessary to spend any of the principal for the education of her children. All we know is that on one day she drew out trust money and on a subsequent day deposited money, presumably her own, because put into her individual account. The court cannot assume a breach of trust without proof, or make an inference of guilt when it is quite possible that the transaction might have been innocent.

On July 19th, 1867, Mrs. Hasselbrock drew from her late husband's account in the Metropolitan Savings Bank $530.45. She drew from an individual account in the same bank a similar amount, and on the same day she made a deposit of $1,310 in another individual account also kept in that bank. The amounts drawn do not correspond with the greater amount deposited, and consequently there is nothing to indicate that the $530.45 taken from her late husband's account was parcel of the $1,310 deposited in her own account, except they were drawn and de-

posited on the same day. Assuming that they were, it does not follow that the transaction was necessarily a breach of trust. She might have been entitled to reimbursement for something paid out of her own funds, in the execution of her duty as executrix and trustee. She had a right, in certain contingencies, to spend principal. Twenty-four years have elapsed, and she is not here to explain what she did. Under these circumstances, it is too much to say that it is clearly proven that the money was money of the estate. This fact, to use the words of Mr. Justice Depue, in *Cutler* v. *Tuttle, 4 C. E. Gr. 560,* must "be distinctly established by satisfactory evidence." The record title to land cannot otherwise be affected by parol testimony.

The remaining item of $109 is open to the same objection.

Of the price paid for the property ($14,700) my conclusion is that only $6,423 are shown to have been trust moneys.

It now remains to be considered whether the complainants have an equitable estate in the property proportionate to the amount contributed, or whether they have a charge. The complainants contend they have an estate. In *Cutler* v. *Tuttle, supra,* it is said, by Mr. Justice Depue, that there is no doubt that payment of part of the purchase-money will create a resulting trust to the extent of that payment, but that it will not arise upon payments made in common, when the consideration is set forth in the deed as moving solely from the grantee, unless satisfactory evidence is offered exhibiting the portion which was really the property of each, and establishing the fact that the payment was made for some specific part or distinct interest in the estate.

Much on the same principle, if the only facts appearing be that the grantee has taken a deed to himself, individually, and has used, in the purchase, both his own money and trust money, the court does not declare a resulting trust, but, says Mr. Perry, in his work on *Trusts* § *842,* "usually gives a lien on the land only for the amount of the trust fund invested and interest." To the same effect is *Lew. Trusts 897,* and the following cases: *Lewis* v. *Madocks, 17 Ves. 55; Price* v. *Blackmore, 6 Beav. 507; In re Pumfrey, 22 Ch. Div. 260; Humphreys* v.

*Butler, 51 Ark. 354.* The statement of Mr. Bispham (§ *86*), if he is to be understood as intimating that, in cases like the present, an estate and not a charge is given, is hardly borne out by the authorities. In one of the cases cited by him (*39 Minn. 18*) a resulting trust was said to have arisen, but in the greater number, only a lien was adjudged. Such was the decision in *1 Rich. Eq. 426; 18 N. Y. 456; 149 Mass. 400.*

If the court gives a lien in the present case, the intent of the testator will be effectuated. He directed that his money should be invested upon good bonds and mortgages of real estate. The charge will stand in place of the mortgage and interest will run from Mrs. Hasselbrock's death. This conclusion will, however, necessitate amending the bill and making August Schroeder, the husband of the deceased daughter, a party.