(50 Misc. Rep. 442.)

### LOCH et al. v. MAYER, Atty. Gen.

(Supreme Court, Special Term, New York County. May, 1906.)

**1. CHARITIES—INSTRUCTIONS FROM COURT.**

Plaintiffs had been appointed a committee to accept donations for the relief of the sufferers by the General Slocum disaster of 1904. They paid, without instructions, from donations received from unknown sources large sums in relief of the sufferers, and an amount directed by the donors to be paid to the church under whose auspices the excursion that resulted in the disaster was conducted, and after extending relief as far as possible in accordance with their trust had a balance of $9,000, and sued for instructions as to the distribution of the fund. *Held* that, if plaintiffs were able to expend all the funds in relief of individual sufferers, Laws 1893, p. 1748, c. 701, as amended by Laws 1901, p. 751, c. 291, regulating authority of courts over gifts for charitable purposes, would not apply to the case.

**2. SAME—DIVERSION OF FUND.**

Where a fund was raised for the relief of sufferers in the disaster to the excursion steamer General Slocum, which excursion was conducted by a certain church, and there remained, after giving relief as authorized, a balance, the giving of such balance to the church giving the excursion would be a diversion from the original purpose of the trust, and unjustifiable.

[Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Charities, §§ 65, 75–77.]

**3. SAME—ACCUMULATION OF TRUST FUND—DIRECTIONS AS TO USE.**

Laws 1901, p. 751, c. 291, provides that the Supreme Court shall have control over gifts in all cases provided for by section 1 of the act, and when it appears that circumstances shall have so changed, since the execution of an instrument containing a gift or grant to religious, charitable, or benevolent purposes, as to render a literal compliance with the terms of the instrument impracticable, the court may direct that such gift shall be administered in such manner as will most effectively accomplish the general purposes of the instrument, but that no such order shall be made until after 25 years from the execution of the instrument, or without the consent of the donor or grantor, if living. *Held*, that where money was contributed to the relief of the sufferers by the General Slocum disaster, and after distribution of the same a balance remained in the hands of the trustees, they should continue to administer the fund for the relief of individuals needing financial assistance, and moneys not so expended should be added to the fund and kept until the expiration of 25 years, when an application for instructions as to the disposition of the fund might be renewed.

Action by Jacob Loch and others against Julius M. Mayer, as Attorney General, for instructions as to moneys remaining in their possession as trustees. Referee appointed to state account.

Decker, Allen & Chatfield (Charles A. Decker, of counsel), for plaintiff.

Miller, Miller & Storm (Jacob F. Miller, of counsel), for claimant.

BLANCHARD, J.   This is an action brought by the plaintiffs, who are now acting as trustees, praying that their account be taken and that they be instructed how to dispose of the moneys remaining in their possession. Immediately after the burning of the excursion steamer General Slocum, on June 15, 1904, when over 950 persons, on an outing conducted by St. Mark's Lutheran Church, lost their lives, measures of relief were organized. The mayor of New York appointed a committee, which received and disbursed about $125,000. The plaintiffs were appointed at a meeting of the ministers of the Lutheran Church at large to serve as a ministers' committee and to accept donations in relief of the sufferers. The plaintiffs received in donations from all sources $20,313.67, a large part of which came from donors unknown to the plaintiffs, whose identity cannot now be determined and who made their gifts without oral or written instructions as to their particular disposition. $7,691.27 was directed by the donors to be for the use of St. Mark's Church, and accordingly the plaintiffs have paid over said sum to the church. The balance was given without express directions, except that it was understood that the committee should apply it to the relief of the sufferers from the Slocum disaster. In such relief work the committee has expended $3,390.04, leaving now in its hands the sum of $9,231.66. The plaintiffs state that in no case has an applicant worthy of relief been denied assistance commensurate with his or her loss, where such loss could be relieved by money. Few requests for assistance have been made to the plaintiffs during the year 1906, and all recent relief, though in some degree connected with the Slocum disaster and its consequences, has been in the nature of pure charity. The plaintiffs state that the indefinite bounds set about the use of the moneys in their possession have now come to be more of a peril than an assistance, and accordingly ask that the court direct what disposition shall be made of the fund. St. Mark's Church appears in this proceeding as a claimant, and asks, by virtue of a resolution of its congregation, that the moneys in the possession of the committee be turned over to the church.

The donors gave the funds now in the possession of the plaintiffs without reservation and without specific instructions, and merely upon the understanding that in the exercise of good faith and discretion the plaintiffs should apply the donations to the relief of suffering incident to the Slocum disaster. The expression of this purpose, by oral and written declarations and by conduct, impressed upon the funds received by the plaintiffs the character of a valid trust for the benefit of an ascertainable and definite class of beneficiaries. Day v. Roth, 18 N. Y. 448, 453; Gilman v. McArdle, 99 N. Y. 451, 459–461, 2 N. E. 464, 52 Am. Rep. 41; Bork v. Martin, 132 N. Y. 280, 284, 30 N. E.

584, 28 Am. St. Rep. 570; Hirsh v. Auer, 146 N. Y. 13, 19, 40 N. E. 397. Since the trust was validly created, the power to direct the execution thereof would seem upon general principles to be vested in this court. The trust, at the time of its creation, was for the benefit of an ascertainable and definite class of beneficiaries. It clearly came, therefore, within the rule as to definiteness of beneficiaries laid down in Power v. Cassidy, 79 N. Y. 602, 35 Am. Rep. 550, and in succeeding decisions discussing that case. Matter of O'Hara, 95 N. Y. 403, 418, 47 Am. Rep. 53; Prichard v. Thompson, 95 N. Y. 76, 82, 47 Am. Rep. 9; Holland v. Alcock, 108 N. Y. 312, 321, 16 N. E. 305, 2 Am. St. Rep. 420; Fosdick v. Town of Hempstead, 125 N. Y. 581, 592, 26 N. E. 801, 11 L. R. A. 715; People, etc., v. Powers, 147 N. Y. 104, 111, 112, 41 N. E. 432, 25 L. R. A. 502; Read v. Williams, 125 N. Y. 560, 568, 569, 26 N. E. 730, 21 Am. St. Rep. 748; Holmes v. Mead, 52 N. Y. 332, 343; Shipman v. Rollins, 98 N. Y. 311, 328, 329. The act of 1893 (Laws 1893, p. 1748, c. 701), providing that charitable gifts otherwise valid shall not be deemed invalid because of indefiniteness of beneficiaries, seems, therefore, inapplicable to the trust in the present case.

The validity of the present trust rests, not upon the act of 1893, but upon long-established principles of equity jurisprudence. If the plaintiffs were able to expend all the funds in their possession in the relief of individual sufferers from the Slocum disaster, the act of 1893 and the law of charitable uses would not have been suggested as applicable to the present case. The plaintiffs, being convinced that the funds cannot thus be exhausted, pray that the court apply the doctrine of cy-pres and direct for what other purpose the fund may be expended. St. Mark's Church contends that under the rule of cy-pres this fund should be paid over to it. All parties seem to appreciate that giving the fund to St. Mark's Church would be a diversion from the original purpose of the trust. The sole question, therefore, is whether such a diversion can be justified by the doctrine of cy-pres, as it exists in the law of this state. The doctrine of cy-pres, which was part of the law of charitable uses developed by common law and stated in St. 43 Eliz. c. 4 (Williams v. Williams, 8 N. Y. 525), has been stated in Pomeroy on Equity Jurisprudence (3d Ed.) § 1027, as follows:

"Where there is an intention exhibited to devote the gift to charity, and no object is mentioned, or the particular objects fails, the court will execute the trust cy-pres, and will apply the fund to some charitable purposes similar to those (if any) mentioned by the donor. 'If the donor declare his intention in favor of charity indefinitely, without any specification of objects, or in favor of defined objects which happen to fail from whatever cause—even though in such cases the particular mode of operation contemplated by the donor is uncertain or impracticable—yet the general purpose being charity, such purpose will, notwithstanding the indefiniteness, illegality, or failure of its immediate objects, be carried into effect.'"

At one time this doctrine seems to have been considered established in New York. Shotwell v. Mott, 2 Sandf. Ch. 46; Williams v. Williams, 8 N. Y. 525. Under the influence, apparently, of the revision of the statutes of New York in 1830, which abolished all uses and trusts in realty not otherwise authorized (1 Rev. St. [1st Ed.]

p. 727, pt. 2, c. 1, tit. 2, § 45), and which failed to authorize expressly all trusts for charitable purposes, it was subsequently declared that the doctrine of cy-pres had no place in New York law. Beekman v. Bonson, 23 N. Y. 298, 310, 80 Am. Dec. 269; Levy v. Levy, 33 N. Y. 97; Bascom v. Albertson, 34 N. Y. 584, 590; Holland v. Alcock, 108 N. Y. 312, 333, 16 N. E. 305, 2 Am. St. Rep. 420; Cottman v. Grace, 112 N. Y. 299, 306, 19 N. E. 839, 3 L. R. A. 145; Fosdick v. Town of Hempstead, 125 N. Y. 581, 592, 26 N. E. 801, 11 L. R. A. 715; Tilden v. Green, 130 N. Y. 29, 45, 28 N. E. 880, 14 L. R. A. 33, 27 Am. St. Rep. 487; People, etc., v. Powers, 147 N. Y. 104, 109, 41 N. E. 432, 35 L. R. A. 502.

It must be noted, however, that at least several of these decisions went no further than denying the existence in New York of that branch of the English doctrine of cy-pres which held that, where gifts are given to charitable uses which are illegal in nature, or upon which no particular trusts are imposed, a court of equity has the same powers of disposal over the fund that the crown had through the royal prerogative of the sign manual. This branch of the doctrine of cy-pres, except in Rhode Island and Massachusetts (Rhode Island Hospital Trust Co. v. Olney, 14 R. I. 449; Minot v. Baker, 147 Mass. 349, 17 N. E. 839, 9 Am. St. Rep. 713), has been pretty generally repudiated in the United States. Fontain v. Ravenel, 17 How. (U. S.) 369, 15 L. Ed. 80; Pom. Eq. Juris. (3d Ed.) § 1027.

It should also be noted that as to trusts of personalty it was frequently stated that the Revised Statutes of 1830 did not define the objects for which they could be created, and consequently that such trusts would be enforced, when not against public policy and not in contravention of provisions of law. Van Vechten v. Van Vechten, 8 Paige, 104, 128, 129, affirmed in Thompson v. Carmichael's Ex'rs, 1 Sandf. Ch. 395; Bucklin v. Bucklin, 1 Abb. Dec. 242, 249; Gilman v. Redington, 24 N. Y. 9, 12; Genet v. Beekman, 26 N. Y. 35, 41; Manice v. Manice, 43 N. Y. 303, 381; Beardsley v. Hotchkiss, 96 N. Y. 201, 216; Gilman v. McArdle, 99 N. Y. 451, 459–461, 2 N. E. 464, 52 Am. Rep. 41; Matter of Carpenter, 131 N. Y. 86, 29 N. E. 1005; Hirsh v. Auer, 146 N. Y. 13, 19, 40 N. E. 397. Whether these cases went to the full extent of holding that the law of charitable uses, as applied to trusts of personalty, survived the statutory revision of 1830, has been seriously questioned. Chap. Ex. T. & P. §§ 508, 510; Fowler, Charitable Uses, 97, 98, 102. According to some authorities the effect of the statutory revision of 1830 was to place an express trust for charitable uses on the same basis at least as regards definiteness of beneficiaries and limits of duration as trusts for noncharitable objects. Chap. Ex. T. & P. §§ 507–510; Fowler, Real Prop. (3d Ed.) 347.

Statutory enactment upon the subject, however, makes the determination of this question unnecessary. By the act of 1893 (Laws 1893, p. 1748, c. 701), of which mention already has been made, the doctrine of cy-pres, as it was formerly stated to exist in New York, was, according to some authorities, enacted by necessary implication. Allen v. Stevens, 161 N. Y. 122, 142, 147, 55 N. E. 568; Bowman v. Domestic & Foreign Missionary Socy., 182 N. Y. 494, 498, 75 N. E.

535. All doubt, however, was finally removed by Laws 1901, p. 751, c. 291, in which it was provided:

"The Supreme Court shall have control over gifts, grants, bequests and devises in all cases provided for by section 1 of this act, and whenever it shall appear to the court that circumstances shall have so changed since the execution of an instrument containing a gift, grant, bequest or devise to religious, educational. charitable or benevolent uses as to render impracticable or impossible a literal compliance with the terms of such instrument, the court may. upon the application of the trustee or of the person or corporation having the custody of the property, and upon such notice as the court shall direct, make an order directing that such gift, grant, bequest or devise shall be administered or expended in such manner as in the judgment of the court will most effectively accomplish the general purpose of the instrument, without regard to and free from any specific restriction, limitation or direction contained therein, provided, however, that no such order shall be made until the expiration of at least twenty-five years after the execution of the instrument or without the consent of the donor or grantor of the property, if he is living. The Attorney General shall represent the beneficiaries in all such cases, and it shall be his duty to enforce such trusts by proper proceedings in the court."

This act as yet seems never to have been judicially construed. Upon the authorities above mentioned, however, it seems to enact the doctrine of cy-pres to the fullest extent that it has ever been held to have existed in New York, and to warrant its application to trusts for charitable and benevolent purposes, where the class of beneficiaries is definite, upon the condition, however, that the doctrine be applied only after "twenty-five years after the execution of the instrument" creating the trust, and with the consent of the donor, "if he is living." A single doubt as to the applicability of the act of 1901 to the trust in the present case is perhaps raised by some of the language of the statute. The "execution of the instrument" is the date from which the period of 25 years is to be computed. Departure from the "literal compliance of the terms of such instrument" and the effectuation of "the general purposes of the instrument" are the objects sought to be obtained by the statute. The trust in the present case was created chiefly by tacit conduct and oral declarations. Few donations were accompanied with writings of any kind, and no such writing, so far as the evidence shows, states with any attempt at precision the terms of the trust. "An instrument" in the ordinary accepted sense is a document or writing. Bouv. Law Dict. (16th Ed.), 1064. "In the law of evidence it has a still wider meaning, and includes, not merely documents, but witnesses and things, animate or inanimate, which may be presented for inspection." 16 Am. & Eng. Ency. of Law, 824. In Queen v. Riley, 1 Q. B. [1896] 309, Hawkins, J., said:

"I am not aware of any authority for saying that in law the term "instrument' has ever been confined to any definite kind of legal documents. In the absence of such authority I cannot but think the term ought to be interpreted according to its generally understood and ordinary meaning, as stated in the dictionaries of Dr. Johnson and of Webster. * * * When used generally Dr. Johnson speaks of it as 'that by means whereof something is done.' Webster as 'one who, or that which, is made a means, or caused to serve a purpose.' * * * Throughout the statute it is evident the Legislature attached no rigid definite meaning to the word, for it is used in a variety of senses, all falling within one or other of the definitions of Dr. Johnson and Webster, to which I have referred. Thus in section 1 of the act the word is used to signify a

document having thereon affixed a counterfeit of the great seal. In sections 9–14 the word is used to denote the tool or implement to be used for making a peculiar kind of paper. In sections 16, 17, 18, the word is used to indicate tools for the manufacture of paper, plates, or implements to be used for carrying out forgeries."

No intention can be gathered from the act of 1901 that the Legislature intended to distinguish between trusts created by documents and writings and trusts created by oral language or expressions or by conduct. The intention was merely to describe that body of expressed intent that originally created and defined the trust. Considered in the light of this intention, the use of the word "instrument" presents no obstacle to the application of the statute to the present case. Since the creation of the present trust circumstances have changed. The beneficiaries for whom the trust was intended are no longer in that need of financial assistance which inspired the donors to contribute to their relief. Conceding the contention of the plaintiffs and the claimant that literal compliance with the terms of the trust is now impracticable or impossible, and that the general purpose of the trust should be effectuated by giving the fund to St. Mark's Church, or to some object other than an individual sufferer of the Slocum disaster, there is presented precisely the situation contemplated by the act of 1901. It is possible that another object than St. Mark's Church would more clearly come within the requirements of the doctrine. This question, however, need not here be determined. The act of 1901 controls every application of the doctrine of cy-pres, and by the clear meaning of its language the act governs the trust in the present case. The claim of St. Mark's Church cannot, therefore, now be considered.

The plaintiffs are directed, as trustees, to continue to administer the fund in their possession for the relief of individuals who, in the honest discretion of the plaintiffs, need financial assistance by reason of the Slocum disaster. Moneys not expended in such relief must be added to the fund and be kept by the plaintiffs and their successors as trustees until the expiration of the period fixed by the act of 1901, when, upon performance of the conditions contained in said statute, so far as such performance is possible, application for directions as to the disposal of the fund may be renewed. A referee will be appointed to take and state the account of the plaintiffs as trustees.