### BOENHARDT v. LOCH et al.

(Supreme Court, Appellate Division, First Department. December 18, 1908.)

1. CHARITIES (§ 48*)—ENFORCEMENT—DISTRIBUTION OF FUNDS.

Where funds were contributed and placed in the hands of a committee to be used for the relief of sufferers in a steamboat disaster, whatever may have been the precise intention of the donors as to the use of the funds, one of the sufferers in such disaster cannot require the capital of the fund to be distributed to himself and other sufferers from the disaster.

[Ed. Note.—For other cases, see Charities, Cent. Dig. § 78; Dec. Dig. § 48.*]

2. CHARITIES (§ 48*)—ENFORCEMENT—RIGHT OF BENEFICIARIES—EXHAUSTION OF FUND.

In an action to compel the distribution of a fund contributed for the relief of sufferers from a disaster, where the part of the fund specifically designated for the use of such sufferers had been paid out, one claiming as a sufferer could not compel the distribution of any part of the remaining funds to himself.

[Ed. Note.—For other cases, see Charities, Cent. Dig. § 78; Dec. Dig. § 48.*]

Ingraham, J., dissenting.

Appeal from Special Term, New York County.

Action by Albin Boenhardt against Jacob W. Loch and others. From a judgment of the Special Term (56 Misc. Rep. 406, 107 N. Y. Supp. 786) dismissing the complaint, plaintiff appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Charles Goldzier, for appellant.
Manton M. Wyvell, for respondent Attorney General.
Charles A. Decker, for respondent Loch and others.

SCOTT, J. I am of the opinion that the complaint was rightly dismissed, for the plaintiff is clearly not entitled to the relief he seeks, which is that the capital of the relief fund now in the hands of the defendants be distributed to him and to such other sufferers from the Slocum disaster as may still survive and still suffer from the results of that accident. We may not be able to say precisely what the donors of the fund intended should be done with the money, but we may feel reasonably certain that they did not intend such a distribution as plaintiff asks for. The evidence, unless we may accept as evidence a referee's report in another action between different parties, gives no information as to the terms upon which the fund was contributed, and affords no ground whatever for relief. If we accept the referee's report, it appears that there were four funds to which contributions were made. One of these consisted of moneys specifically designated "for sufferers." Much more than the amount thus designated had been paid out. I see no necessity for instructing the defendants as to the performance of their duties respecting the money

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

still in their hands, as that has already been done by this court in another action.

In my opinion the judgment should be affirmed, with costs to the respondents, other than the Attorney General.

PATTERSON, P. J., and CLARKE, J., concur.

LAUGHLIN, J. I vote for affirmance upon the ground that the moneys were donated for the purpose of temporary relief only, and not to create a pension fund for the sufferers, and that, therefore, plaintiff has now no interest in the fund.

INGRAHAM, J. (dissenting). The complaint alleges that on the 15th of June, 1904, at an excursion of the Sunday School of St. Mark's Evangelical Lutheran Church, the steamer Gen. Slocum, upon which the excursionists were being transported, took fire and was destroyed, in consequence of which many lives were lost and many others were severely injured; that subsequently contributions came to the church and parsonage connected therewith which were expressly made "for the benefit of sufferers of the said calamity and for the purpose of being distributed among persons who had sustained injury thereat, or had lost relatives, or had lost persons to whose support they were entitled by reason of their parentage and their relationship, and that such sums were received and held subject to such trusts"; that subsequently the defendants were appointed a committee to receive the subscriptions and to distribute them according to the wishes of the donors; that some of the money so contributed was distributed for the benefit of the parties who had suffered in consequence of the burning of the said steamer, but that a large proportion of the sum so received is still in the hands of the defendants, other than the Attorney General, unexpended, unappropriated, and subject to distribution among those entitled thereto in conformity with the wishes and desires of the donors of the said several sums of money; that the plaintiff was a passenger upon the said steamer Gen. Slocum, and was severely and permanently injured; that he has no means of support, and is one of the persons for whose benefit the said money was contributed; that plaintiff has received from this fund $180, and that a large number of other persons who were also injured and who were the beneficiaries under and in pursuance of the design of the donors have received no support or entirely inadequate support, and have not been relieved in accordance with the design of the donors of the fund, and the plaintiff asked judgment that the plaintiff and the other persons injured are entitled to distributive shares of the fund in the hands of the defendant, and that such distributive shares may be fixed by the court and the money in the hands of the defendant committee be distributed among those who are entitled thereto. The members of the committee answered, admitting that they had received as contributions the sum of $10,621.70 for the purpose of relieving individual sufferers, and that the distribution of such sum was and has been and is to be made in accordance with the

best judgment of these defendants, and as a separate defense the defendants allege that they have accounted in an action brought in this court for the fund received by them, in which action the Attorney General of the state of New York was a party. Upon the trial the court found that these contributions came to the St. Mark's Lutheran Church and to the parsonage connected therewith from donors known and unknown; that subsequently defendants were appointed a committee to receive and apply donations "evoked by the said disaster"; that the defendants therein above named continued to constitute the whole of said committee and received all gifts which were made at or might come to the parsonage of the church aforesaid, and were to distribute them according to the express wishes of said donors when indicated, and to the relief of suffering incident to the Slocum disaster according to the best judgment of the said committee, where no direction was given concerning the application of gifts; that the defendants have on hand some of the aforesaid funds unexpended and unappropriated and subject to distribution among those entitled thereto in conformity with their acceptance thereof; that there is no evidence of misfeasance or malfeasance on the part of the said defendants; that the plaintiff was a passenger on the steamer Gen. Slocum at the time of the burning thereof, and was injured thereby, and plaintiff has received from the said defendants out of the funds that came to them about $180, and was offered further assistance from the said defendants, which offer he refused, and, as a conclusion of law, that the defendants as trustees and the survivor or survivors of them, and their successors, shall continue to administer the fund in their possession for the relief of individuals, who in the honest discretion of such trustees need financial assistance by reason of the Slocum disaster. Upon this decision a judgment was entered dismissing the complaint, with costs.

Upon the trial the plaintiff testifies that he received injuries at this accident which resulted in injury to his eyes, so that he has been unable to obtain work since the accident; that the injuries were so severe that he could neither read nor write; that he has applied to the committee for assistance, and was told by the committee that they could not dispose of the money, that it was tied up, and that the committee had no more power to help him; that he subsequently received a letter from the committee that they would take up his case as soon as they could dispose of the money that they had on hand, but that he had heard nothing from the committee. The defendants offered in evidence the judgment roll in the former action to which the plaintiff was not a party, in which it was found that the plaintiffs in that action who were the committee in charge of this fund received contributions amounting to $22,657.71 prior to January 1, 1907; that of the moneys received by the committee $1,000 was placed in their custody by the pastor of the church which had been given by the donors to the pastor's discretionary fund, and this sum was repaid on demand to the pastor. In addition to that, the committee have paid to the treasurer of St. Mark's Church the moneys specifically contributed to the St. Mark's Church fund, amounting in all to the sum of $8,041.41. And

the judgment entered directed that the trustees pay to St. Mark's Church, in addition to the sum theretofore paid to it, the sum of $2,-000, being money received by the trustees which was directed to be given by them to the said church, and judgment was entered directing the trustees to continue to administer the balance of the fund until July 1, 1931, and authorizing any party to apply at the foot of the decree for such other and further relief as may be proper. That this is a valid trust is sustained by the authorities. Trusts may be created in personal property by parol, and, to accomplish this, no particular form of words is necessary; and, if a trust of personal property is not against public policy and does not contravene any existing provisions of law, all courts of equity will enforce them. See Hirsh et al. v. Auer, 146 N. Y. 13, 40 N. E. 397, and cases there cited. And the defendant, having received this money subject to the 'trust and with knowledge of the trust to which it was subject, is responsible in a court of equity. In Hoffman House v. Foote, 172 N. Y. 348, 65 N. E. 169, it was said:

"It is not necessary to use any particular formula of words in order to create a trust of personal property, and it is not even necessary that such a trust should be evidenced by any writing. Trust relations will be implied when it appears that such was the intention of the parties, and when the nature of the transaction is such as to justify or require it."

The court below held that this case was not affected by chapter 701, p. 1748, Laws 1893 (as amended by chapter 291, p. 751, Laws 1901), on the ground that that statute provided only for grants, bequests, or devises invalid under the laws of the state by reason of the indefiniteness or uncertainty of the persons designated as the beneficiaries thereunder, and, as in this case the beneficiaries are persons within an ascertainable and definite class, it is not within the provisions of the act. I think the judgment in the action brought by the trustees protects them in the application of the funds made in pursuance of it; and the only question that can be considered is as to the balance remaining in the hands of the trustees after the payments directed to be made by that judgment. The balance in the hands of the trustees consists of money directly contributed by charitable persons for the relief of sufferers of this disaster, and it was undoubtedly the intention of the donors that the money thus contributed should be directly applied for that purpose. We must assume that the money that has been paid by the committee to the church was properly paid to it, but it is clear that the balance of the money held by the defendant trustees was contributed directly for the benefit of individuals who sustained injuries by the disaster. It seems to me that there was directly impressed upon the fund when contributed a trust for the benefit of those who had received injuries from the burning of the steamer. The question then arises as to what, if any, relief a person who sues on behalf of himself and all others who are interested in the fund is entitled. The serious injury to the plaintiff is not disputed. It would appear from the testimony that he has been rendered totally unable to earn his living by reason of the injuries received at this disaster. He has received but $180 from this fund, although there is a large amount of both

principal and interest unexpended. He applied for additional assistance, and was told that it could not be then given to him as the money was out of its hands and tied up, and the plaintiff subsequently received a letter from the pastor of the church, who was one of the committee, stating that they would take up the plaintiff's case as soon as the committee had the disposition of the money. Plaintiff made no further application to the committee, relying on this statement that the committee would communicate with him when they were in a position to make a further disposition of the fund. Certainly this plaintiff is entitled to relief from this fund; the bona fides of his claim not being disputed. No excuse is offered by the committee for its failure to apply at least some portion of the fund to the relief of the plaintiff. There is no question but that this was a valid trust under the laws of this state, unless it be that the persons designated as the beneficiaries were too indefinite or uncertain to enforce it. If the beneficiaries were sufficiently definite so that the trust would be enforced, then the Supreme Court in the exercise of its equitable jurisdiction had power to enforce it, and by its judgment give such directions as would insure its enforcement. If, however, the beneficiaries were so indefinite that the law prior to 1893 prevented its enforcement, then under the provisions of that statute the court is given control over such trusts and to administer them in such manner as in the judgment of the court will most effectually accomplish the general purpose of the trust.

My conclusion is that the judgment should be modified so as to declare that these individual defendants as trustees hold this fund for the benefit of the persons who were injured by this disaster and should apply the same to the relief and for the benefit of such persons; that the plaintiff is entitled to a proportion of the funds in the hands of the trustees; and that the plaintiff or any other person who is entitled to relief shall be at liberty by coming in and making himself a party to this action to apply to the court at the foot of the judgment for such other order or direction as will be necessary to enforce the trust. The plaintiff is entitled to the costs of this action, and this appeal to be payable out of the fund. The question as to the ultimate disposition of the fund can be left until it is ascertained whether it will all be required for the relief of those injured by the disaster.